PUBLISH

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

--------------------------------------------

No. 97-8902

--------------------------------------------

D. C. Docket No. 2:95-CV-152

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
08/21/98
THOMAS K. KAHN
CLERK

JILL GRAY,

Plaintiff-Appellant,

versus

BOARD OF REGENTS OF THE UNIVERSITY SYSTEM OF
GEORGIA; DELMAS ALLEN, in both his official and
individual capacity, et al.,

Defendants-Appellants.

-----------------------------------------------------------------

Appeal from the United States District Court
for the Northern District of Georgia

-----------------------------------------------------------------

(August 21, 1998)


Before EDMONDSON and CARNES, Circuit Judges, and CLARK, Senior Circuit
Judge.


# EDMONDSON, Circuit Judge:

This appeal involves a denial of tenure to a state college professor and the professor's claims of a violation of procedural due process, breach of contract, sexual discrimination, and age discrimination. Plaintiff-Appellant appeals the district court's grant of summary judgment for defendants and the court's denial of partial summary judgment in her favor. We affirm.

## Background

Plaintiff Jill Gray is a fifty-two year old woman formerly employed as an assistant professor at North Georgia College & State University. North Georgia is governed by the Board of Regents of the University System of Georgia.

Plaintiff was hired to teach in the Mathematics and Computer Science Department in September 1985 even though she had a B.S. and M.A. in philosophy. As a nontenured

assistant professor, plaintiff was given a one-year employment contract each academic year.

Plaintiff first applied for tenure during the 1989-90 academic year. She discussed her application with defendant Dr. Delmas Allen, who was then Vice President of Academic Affairs. On the advice of Allen, plaintiff withdrew her 1989-90 application for tenure to pursue an advanced degree in either mathematics, computer science, or another closely related field.

After completing her seventh year of teaching, plaintiff was granted a leave of absence during the 1992-93 academic year to attend graduate courses full-time at the University of Georgia. Plaintiff taught no classes during this time but was paid half her salary and received financial assistance to help pay her tuition.

Plaintiff returned to full-time teaching at North Georgia under an eighth contract for the 1993-94 academic year. During

that year, plaintiff again applied for tenure. In September 1993, plaintiff received a letter from Allen, who was then President of North Georgia, notifying Gray that her contract would be renewed for the 1994-95 year pending the decision of the tenure committee. After considering Gray's tenure application, the Promotion and Tenure Committee of the Mathematics and Computer Science Department recommended that plaintiff be granted tenure. But, the Institutional Promotion and Tenure Committee recommended that plaintiff not be granted tenure. Allen notified plaintiff of this latter decision in a letter dated 25 January 1994.

In May 1994, plaintiff received and signed a contract for her ninth year of teaching at North Georgia -- marked as her "final contract." With this contract, Gray enclosed a letter informing Allen that, by signing the contract, she was not waiving her rights to challenge the adverse tenure decision. Plaintiff's

4

employment ended in June 1995; and she brought suit in November 1995.

The district court granted summary judgment for defendants on all grounds and denied plaintiff's motion for partial summary judgment.[1]

## Discussion[2]

North Georgia has an established practice for formally awarding tenure. The basic criteria for tenure at North Georgia include (1) excellence in teaching; (2) service; and (3) academic

---

[1] Defendants' motion for summary judgment on the grounds of immunity (11th Amendment and qualified) was denied as moot because the district court dismissed plaintiff's federal and constitutional claims. We do not consider these immunity issues.

[2] We only discuss the tenure issue; we see no reversible error on the other claims, including the sex and age discrimination claims.

achievement and professional growth. North Georgia expects the applicant for tenure to present evidence of excellence in two of the three areas; and to present evidence of average or better performance in the third. Superior performance in teaching is essential; otherwise, no order of importance is indicated by the college.

Each year department heads request that all eligible faculty who choose to apply for tenure submit a dossier and document file. The Department Head sends all documentation to members of the Department Promotion and Tenure Committee. This committee interviews the applicant, deliberates, and returns the package to the Department Head with a written recommendation. The Department Head reviews the recommendation, adds a personal statement about the applicant, and forwards the entire package to the Vice President of Academic Affairs.

The Vice President submits all tenure materials to the Institutional Promotion and Tenure Committee -- which reviews each candidate and makes a recommendation to the Vice President. These recommendations, along with his own, are then forwarded to the President for his consideration. The President's recommendations are forwarded to the Chancellor, and the Chancellor's recommendations are forwarded to the Board of Regents for the final approval of tenure.

## Whether Summary Judgment Was Appropriate

Plaintiff acknowledges that she was not awarded tenure in the usual way. But Gray argues she had tenure or its equivalent and, therefore, a property interest in continued employment at North Georgia (subject to the Fourteenth Amendment's due process guarantees) under two theories: (1) the express language of her contract automatically granted

7

plaintiff tenure in her eighth year of teaching; and (2) the conduct of and documents of defendants plus the institutional understanding of tenure gave plaintiff de facto tenure.

The success of due process arguments depends upon the finding of a constitutionally protected property interest in the expectation of continued employment or of a liberty interest having been infringed upon by the State; absent such interest, no due process protections attach. <u>Board of Regents v. Roth</u>, 408 U.S. 564, 569-70 (1972). A person claiming a property interest in a benefit "must have more than an abstract need or desire for it . . . . He must . . . have a legitimate claim of entitlement to it." <u>Id.</u> at 577. Moreover, property interests, by their nature, are "created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." <u>Id</u>.

## <u>Theory 1 - Tenure with a Grant of the Eighth-Year Contract</u>

Plaintiff brings out that her written employment contracts expressly provided that they were made subject to the bylaws/policies of the Board of Regents, which is the only place where tenure is described. And, Gray says that her mere presence as a member of the faculty beyond a seven-year probationary period demonstrates she was protected by the tenure system.

At all times, Gray was an employee within an employment system that uses a formal tenure system. The policies of the system are written and widely-circulated. Each yearly contract signed by Gray, including the last, contained the following provisions:

> I HEREBY ACKNOWLEDGE THAT THIS CONTRACT AND THE ATTACHED EXHIBIT 'A' [the regulations of North Georgia and the bylaws/policies of the Board of Regents] CONSTITUTE THE ENTIRE AGREEMENT BETWEEN THE PARTIES AND SHALL NOT BE CHANGED, MODIFIED, AMENDED, WAIVED OR DISCHARGED EXCEPT BY AN INSTRUMENT IN WRITING SIGNED BY THE PARTIES HERETO.

9

**I UNDERSTAND THAT AT THE EXPIRATION OF THE TERM OF THIS CONTRACT I WILL NOT BE REEMPLOYED UNLESS THERE IS A NEW AND SEPARATE OFFER BY THE BOARD OF REGENTS ON BEHALF OF NORTH GEORGIA COLLEGE AND ACCEPTANCE THEREOF BY ME.**

Gray's "property" interest in employment, if any, was created and defined by the terms of her contract.[3] By contract, her interests in employment were secured for one college term only. Like <u>Roth</u>, the contract specifically provided that Gray's employment expired on a set date (the end of the term). And, the contract had no provision for renewal: it expressly negates future employment absent a new and separate offer by the Board of Regents. Thus, the terms of the contract on the contract's face secured no interest in reemployment for the future.

---

[3] Interpretation of a contract is a question of law. <u>Wheat, First Securities, Inc. V. Green</u>, 993 F.2d 814-817 (11th Cir. 1993); <u>Irvin v. Laxmi. Inc.</u>, 467 S.E.2d 510, 512 (Ga. 1996).

Plaintiff points beyond the face of the contract. She claims university system policy, incorporated by reference into the contract, created her right to reemployment. She relies directly on section 803.09(F) of the Board of Regents Policy Manual, which states:

> The maximum time that may be served at the rank of assistant professor or above without the award of tenure shall be seven years, provided, however, that a terminal contract for an eighth year may be proffered if an institutional recommendation for tenure is not approved by the Board of Regents.

But nothing in the words upon which plaintiff relies says that the professor, after seven years, must be viewed as tenured if the professor receives another ordinary contract for an eighth year.[4] The words create no entitlement for professors

---

[4] Plaintiff's eighth-year contract says nothing about its being a "final contract." Nor does the evidence show that plaintiff was told when the contract was proffered to her that this contract

and, at most, create a duty for local college and university officials <u>not</u> to do something: not to keep giving contracts to nontenured faculty members.

We find it helpful to refer to the laws of Georgia's public school system for elementary and secondary education to see how something very much like "tenure" is conferred in that system:

> A teacher who accepts a school year contract for the fourth consecutive school year from the same local board of education may be demoted or the teacher's contract may not be renewed only for those reasons set forth in subsection (a) of Code Section 20-2-940.

O.C.G.A. § 20-2-942(b)(1). Thus, Georgia has provided in no uncertain terms what the consequence is for public school teachers who are awarded a contract for a fourth consecutive school year: they get definite rights that look much like "tenure."

---

was a final contract.

12

In sharp contrast, the Board of Regents manual to which Gray points says nothing about a professor getting new rights or new protections or a new status if the professor is awarded an eighth contract. To the contrary, the words relied on by plaintiff in the manual signal that an award of tenure is something apart from getting a contract for a particular year and that tenure requires the approval of the Board of Regents.[5]

The manual tells local college and university officials that no regular eighth-year contract should be given unless an award of tenure has been made already; that idea is a very different idea than saying that proffering a contract for an

---

[5]For tenure, the need for approval of the Board of Regents is stressed in a related and earlier part of section 803.09:

> D.  <u>Tenure may be awarded, upon recommendation by the president and approval by the Board of Regents,</u> upon completion of a probationary period of at least five years of full-time service at the rank of assistant professor or higher.

(emphasis added).

eighth year vests a professor with tenure.  And, particularly considering that Georgia -- although in not exactly the same context -- has demonstrated a style of speaking more plainly when educators are to get  continuing contracts, we see no ambiguity in the Board of Regents Policy Manual that helps plaintiff at all.

The Board of Regents Policy Manual and Gray's employment contracts make it clear to us, as a matter of law, that a professor is nontenured until she, upon approval of the Board of Regents, is awarded tenure and that getting an eighth-year contract, by itself, is not getting tenure or the equivalent of tenure.  Without being granted tenure, plaintiff had no right to reemployment, either under the terms of her contract, under the regulations of North Georgia, or under the bylaws and policies of the Georgia Board of Regents.

## Theory 2 - De Facto Tenure

Still, plaintiff advances another theory that might support a claim to continuing employment. The Supreme Court in <u>Perry v. Sindermann</u> acknowledged that a professor might obtain de facto tenure even though tenure has never been formally conferred. 408 U.S. 593 (1972). This result is possible under a theory of implied contracts whereby "[e]xplicit contractual provisions may be supplemented by other agreements implied from the promisor's words and conduct in the light of the surrounding circumstances. . . .The meaning of [the promisor's] words and acts is found by relating them to the usage of the past." <u>Id.</u> at 602 (internal quotations and citations omitted).

The <u>Sindermann</u> Court concluded that just as there may be a "common law of a particular industry or of a particular plant . . . there may be unwritten common law in a particular university that certain employees shall have . . . tenure." <u>Id.</u>

(internal quotations omitted). Thus, a property interest might be manifested by an employer's historical practices and past conduct which rise to the level of a "common law," or institutional understanding, of the employment relationship that both parties recognize and rely on as establishing their respective rights and responsibilities.

Although the Board of Regents never formally conferred tenure upon Gray, we will consider whether some pre-existing practice by the college gave rise to a legitimate claim of entitlement to continued employment for Gray. Plaintiff contends such an entitlement exists because of an institutional understanding that a faculty member receives tenure by default under the Board of Regents' policy if one serves as assistant professor for more than seven years. After considering the record -- with the evidence viewed in favor of the plaintiff -- we cannot agree.

16

The evidence advanced to support an institutional understanding of automatic tenure is Dr. Allen's deposition testimony: "My interpretation [of the Board of Regents Policy Manual section 803.09(F)] is that if a faculty member is here without applying for tenure and resides or isn't picked up within seven years and there's been no break in time, yes, they're entitled to automatic tenure."[6]  Assuming for the sake of argument that Georgia law will allow some kind of de facto tenure, we conclude plaintiff's evidence is legally insufficient.[7] In so concluding, we have considered, among other facts, that the college does have an explicit and formal tenure system.

---

[6]Dr. Allen gave similar testimony at other points in his deposition. But this statement is the one chiefly discussed by the parties.

We note that in Gray's situation there seemingly had been a break in time: the 1992-93 academic year.  This fact, however, is not critical to our decision.

[7]We do not decide today whether Georgia law precludes altogether the possibility of an implied contract where explicit tenure is available.

To show a "custom" or institutional understanding, plaintiff must show some historical basis for believing the custom existed. But, plaintiff introduced no evidence that the kind of automatic tenure she now claims had ever been used at North Georgia before she filed this lawsuit. She has pointed to no one who in the past got tenure in this manner. Also, none of the many deponents from the college testified about the existence of such a custom. And, as a matter of law, one administrator's stated "interpretation" of the Board of Regents Policy Manual -- an interpretation not based on concrete experience with someone actually getting tenure by default -- cannot rise to the level of "common law" of the university that <u>Sindermann</u> demands. Thus, Gray's de facto tenure claim must also fail.

## Conclusion

We agree with the district court's decision that Gray never had tenure (and therefore no property right entitled to protection under the Fourteenth Amendment).[8] "The institution of tenure has an inexorable internal logic: the very existence of a tenure system means that those teachers without tenure are not assured of continuing employment." Staheli v. University of Mississippi, 854 F.2d 121, 124 (5th Cir. 1988). "The whole purpose of the distinction between tenured and non-tenured faculty [is to give the college] discretion over the employment of non-tenured teachers." Id. at 125; See Megill v. Board of Regents, 541 F.2d 1073, 1078 (5th Cir. 1976) (because Florida college had explicit written tenure program teacher had no reasonable expectation of reemployment). Gray is unhappy with the way the college exercised its discretion. But the

---

[8]Our decision is in agreement with a similar Sixth Circuit case. See Edinger v. Board of Regents, 906 F.2d 1136 (6th Cir. 1990) (professor remaining employed beyond probationary period did not acquire tenure).

**circumstances she has evidenced do not create a protected property interest.[9]**

**AFFIRMED.**

CLARK, Senior Circuit Judge, dissenting:

---

[9]Gray says that Allen, when Vice President of Academic Affairs, made particular representations and assurances to her that she was progressing toward tenure (by taking advanced courses).  She argues that these statements created a constitutionally protected property interest. But one's reliance on a person's "promises" to one specifically is quite different from relying on an established custom or general institutional understanding at the college. And, even if a definite promise was made (which is unclear even from plaintiff's own testimony), Allen's representations about tenure cannot bind North Georgia and the Board of Regents beyond the terms of the written contracts. See generally Brown v. State Bd. of Exam'rs of Psychologists, 378 S.E.2d 718 (Ga. Ct. App. 1989) (state agency not estopped by agent's representations).

I disagree that the evidence was insufficient to create a genuine issue of material fact in this case, and I would therefore find that the district court erred in granting summary judgment. The majority concludes that nothing in the language of the policy manual says that after seven years a professor who continues to teach has tenure, and no words in the employment contract created an entitlement. I think that this conclusion misses the point of a de facto argument: if the express language was present, then a de facto analysis would be unnecessary.

The Board of Regents policy manual provided that an assistant professor could serve only seven years without tenure, except that a final contract for an eighth year could be allowed. Gray taught for seven years, then was given a year off to return to school to work toward the degree that she had been told would enhance her application for tenure. The college paid for at least part of her tuition and paid half her salary during that year off, and they had an agreement with Gray that she would return to full-time teaching. She returned to full-time teaching for two years after her year off, teaching for a total of nine years.

The Supreme Court stated in Board of Regents of State Colleges v. Roth:[10] "[p]roperty interests, of course, are not created by the Constitution.

---

[10] 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

21

Rather they are created and their dimensions are defined by existing rules *or understandings* that stem from an independent source such as state law--rules *or understandings* that secure certain benefits and that support claims of entitlement to those benefits."[11]

The policy manual says that professors should not be teaching more than seven years unless they are tenured. Not only did Gray teach more than seven years, **after** her seventh year of teaching the college paid half her salary while she attended school and assisted her with tuition. This is not the behavior of an employer who does not intend to retain an employee. Moreover, the college president, a most persuasive authority, testified in his deposition that his interpretation of the Board of Regents policy manual was that a faculty member who continued teaching after seven years was entitled to automatic tenure. The majority finds this evidence insufficient because one administrator's interpretation of the manual did not provide evidence of a custom or institutional understanding. That statement alone may not be conclusive, but when combined with the other facts, could provide enough evidence for a jury to find that Gray had received tenure de facto.

---

[11] Id. at 577, 92 S.Ct. at 2709 (emphasis added).

I think that the evidence is sufficient to create a genuine issue of fact. I cannot say that Gray will definitely prevail, but I think that an issue of fact exists and that summary judgment was erroneously granted.