## A01A2340. WALKER v. BOARD OF REGENTS OF THE UNIVERSITY SYSTEM OF GEORGIA.
### (561 SE2d 178)

SMITH, Presiding Judge.

Melvin E. Walker, Jr., Ph.D., brought this action against his employer, the Board of Regents of the University System of Georgia d/b/a Fort Valley State University. He appeals from the trial court's grant of summary judgment to Fort Valley and the denial of his cross-motion for summary judgment. Walker contends that Fort Valley breached a written or oral employment contract when he was not reappointed to the position as Director of the Agricultural Research Station and was offered only a nine-month academic year contract instead of a twelve-month fiscal year contract as in the past. Because we find the trial court correctly concluded that the university breached no contract, we affirm the judgment.

Walker's employment at the university's College of Agriculture began in 1973. From 1973 to 1998, he was employed under yearly 12-month fiscal year contracts. Under those contracts, Walker was classified as having both teaching and administrative or research responsibilities. He also served for a time as Dean of the College of Agriculture, as Director of the Agricultural Research Station, and as Acting President of the college.

---

[9] *Law v. State*, 121 Ga. App. 106, 108 (2) (173 SE2d 98) (1970).
[10] See *Bluain v. State*, 242 Ga. App. 125, 131 (4) (529 SE2d 155) (2000).

In 1994, a female professor in the College of Agriculture informed the university's president, Dr. Oscar Prater, that she and other faculty members were being treated unfairly and sexually harassed by Walker. She subsequently filed suit in federal court against the Board of Regents, the university, and Walker, alleging gender discrimination and sexual harassment. Walker was dismissed from the suit as an improper party, and the suit was later settled, with the board paying the plaintiff $50,000. Dr. Stephen Portch, the Chancellor of the Board of Regents, notified President Prater of the settlement, instructing him that under other terms of the settlement, Walker was "to have no supervisory authority over [the plaintiff] for the duration of her employment at the institution, and that he [was] to refrain from making disparaging remarks about" her. Chancellor Portch also requested that President Prater "investigate the facts of this case thoroughly and take appropriate management actions, including those that insure that there is no further liability to the institution from actions or comments by Dr. Walker," and that he report to him the actions taken.

President Prater forwarded Chancellor Portch's letter to Dr. Josephine Davis, the college's Vice President for Academic Affairs, for investigation. With President Prater's approval, Dr. Davis then informed Walker that he was being removed from his positions as Dean and as Director of the Research Station. Instead of a twelve-month fiscal year contract, he was offered a nine-month academic year contract. Although the pay rate was the same, because he was paid for only nine months his total salary was $78,324, whereas in the previous year his contract called for a salary of $100,811.

Walker tried several times to have the Board of Regents review this action, but the board refused. Walker eventually signed the contract presented to him, reserving any appeal rights. After giving the board ante litem notice, Walker filed this action.

1. Walker contends the trial court erred in granting summary judgment to the defendants because genuine issues of material fact exist as to whether the board breached its own policies and bylaws, which were incorporated into the employment contract. One such policy is Section 803.1402 (c) of the board's policy manual, which states:

> When a fiscal year administrative employee returns to an academic appointment as a faculty member, the salary shall be determined on the same basis as other faculty members with the similar rank and experience within the department to which he/she returns or in other similar positions within the institution.

Each year's contract has provided that it is made expressly subject to applicable law "and to the statutes and regulations of this institution and to the bylaws and policies of the Board of Regents."

Although Walker argues that no other members of his department have nine-month contracts, we agree with the trial court that the defendants did not breach Walker's employment contract by offering him a nine-month contract, because the board was not required to base his salary on that of other faculty members within his department, but could, and did, base it on similar positions within the institution. Moreover, the institutional policy regarding employment of tenured faculty provides that such faculty must be provided "continued employment on a 100 percent workload basis for two out of every three consecutive academic semesters until retirement, dismissal for cause, or release because of financial exigency or program modification as determined by the board." The university's faculty handbook states that tenured faculty "will automatically be issued a contract, respectively, for the ensuing academic or fiscal year. However, fiscal faculty should remain cognizant of the fact that tenure at the University is only guaranteed for a nine-month period only [sic]." Walker was offered a contract that complied with these provisions. He has been guaranteed continued employment for two out of three semesters. Walker has presented no evidence of entitlement to any more, and he has not shown any breach by the defendants of their own written policies or his employment contract.

2. Walker also argues that an implied contract existed guaranteeing him continued employment under a 12-month contract, based upon the university's "repeated course of conduct in assigning fiscal year contracts to members of the agricultural science department." He argues that he had always had fiscal year contracts and it was his understanding

> that I would continue to receive one. . . . It was my understanding at the time that I was appointed that I would receive fiscal year contracts because those were the kinds of contracts that were offered in Agricultural Sciences, and there were no others. So there was no reason for me to assume that I would get anything different from that.

Citing *Gray v. Bd. of Regents &c. of Ga.*, 150 F3d 1347 (11th Cir. 1998), Walker argues that under *Perry v. Sindermann*, 408 U. S. 593 (92 SC 2694, 33 LE2d 570) (1972), " 'explicit contractual provisions may be supplemented by other agreements implied from the promisor's words and conduct in the light of the surrounding circumstances,' " whereby the meaning of the promisor's words and acts is determined using past actions and customs. *Gray*, supra at 1352; see also *Perry*, supra at 602.

It is clear, however, that Walker's duties have changed, since he now has no administrative or research duties. "It is a recognized rule that where something is used in comparison with another to illustrate a condition or point that it is necessary that such conditions be substantially similar. [Cit.]" *Doster v. Central of Ga. R. Co.*, 177 Ga. App. 393, 398 (5) (339 SE2d 619) (1985) (physical precedent only).[1] The university's past offers of 12-month contracts were therefore not based upon similar "surrounding circumstances," and they cannot serve as a basis for implying an entitlement to continued 12-month contracts.

3. As best we can understand Walker's argument, he maintains that he has a property interest in his former position as Director of the Agricultural Research Station, which is "classified," and in his salary being based upon a comparison of other faculty members with similar rank and experience within his department, because no other university positions are similar. The board takes the position that the position of Director of the Agricultural Research Station is not a "classified" position. The record does not include documents supporting either position, and we therefore cannot agree with either party. We note, however, that Walker, as appellant, bears the burden of showing error affirmatively by the record. He cannot discharge this responsibility with statements in his brief. *Stagl v. Assurance Co. of America*, 245 Ga. App. 8, 11 (3) (539 SE2d 173) (2000). But even if Walker's assertion is correct, he did not pursue or exhaust the administrative remedies necessary to such a claim. He was required, under the policies of the board, to request a hearing within 15 days of the final decision removing him from his position. The letter informing Walker of the decision is dated April 30, 1998. Walker did not request a hearing until June 22, 1998, and even that challenged only his receipt of a nine-month rather than a twelve-month contract, not his removal from the so-called "classified" position. This court cannot preempt administrative remedies except as a matter of equity, to prevent irreparable injury. We will not interfere unless administrative remedies have been exhausted. *Bacon v. Brewer*, 196 Ga. App. 130, 131 (395 SE2d 383) (1990).

*Judgment affirmed. Barnes and Phipps, JJ., concur.*

DECIDED FEBRUARY 22, 2002 — ▉▉▉▉▉▉

---

[1] Although *Doster* is physical precedent only, it has been cited extensively. See, e.g., *Dept. of Transp. v. Brown*, 218 Ga. App. 178, 183 (4) (460 SE2d 812) (1995); *Tahamtan v. Tahamtan*, 204 Ga. App. 680, 682 (4) (420 SE2d 363) (1992).

*Ruffin & Dell, Charles L. Ruffin, Joel V. Sherlock,* for appellant.
*Carlock, Copeland, Semler & Stair, Adam L. Appel, Kimberly N. Royal,* for appellee.