A05A0312. HOMER v. BOARD OF REGENTS OF THE
UNIVERSITY SYSTEM OF GEORGIA.
(613 SE2d 205)

ANDREWS, Presiding Judge.

Gregory Homer filed an action for breach of contract against his employer, the Board of Regents of the University System of Georgia ("BOR") d/b/a Fort Valley State University. Homer alleged that the BOR had miscalculated his revised teaching salary after his employment position at Fort Valley changed. Homer sued to recover lost salary, benefits including retirement benefits, and attorney fees for bad faith. The trial court granted summary judgment to the BOR. Because we find that the trial court correctly concluded that no breach occurred, we affirm the judgment.

---

[11] (Citation omitted.) *Griffiths v. Rowe Properties,* 271 Ga. App. 344, 345 (2) (609 SE2d 690) (2005).

When reviewing the grant or denial of summary judgment, we conduct a de novo review of the law and the evidence and construe the evidence and all reasonable deductions therefrom in favor of the nonmoving party. *Holbrook v. Stansell*, 254 Ga. App. 553 (562 SE2d 731) (2002). In reviewing a trial court's ruling on a legal question, we owe no deference to that court. *Suarez v. Halbert*, 246 Ga. App. 822, 824 (1) (543 SE2d 733) (2000).

So considered, the evidence shows that Homer began teaching at Fort Valley in 1979 and advanced to the tenured position of associate professor. During the 1997-1998 academic year, then consisting of three quarters, Homer's compensation as an Associate Professor of Criminal Justice was $49,537. In July 1998, Homer was appointed Associate Vice President for Student Affairs/Associate Professor at a 12-month salary of $70,000 for July 1, 1998, to June 30, 1999. Homer's employment contract expressly recited:

> You are not guaranteed to hold your administrative position for the duration of the contract, because you hold your administrative title and position at the pleasure of the President. Your tenure status applies only to your appointment as a faculty member and not to your appointed position as an administrator. Should your administrative position be vacated and, if you are reassigned, your salary may be changed.

Over the next three years, Homer executed a series of one-year contracts, each of which provided for pay increases. The contract for July 1, 1999, to June 30, 2000, paid Homer an annual salary of $73,500. The contract for July 1, 2000, to June 30, 2001, paid Homer an annual salary of $75,429. Under the final contract for July 1, 2001, to June 30, 2002, Homer was to receive an annual salary of $79,495.

In October 2001, Kofi Lomotey became the new president of Fort Valley. Lomotey testified that the Chancellor of the Board of Regents, Stephen Portch, informed him that Fort Valley's administration was top-heavy and directed him to streamline that administration due to budget constraints. Lomotey decided to eliminate the position that Homer held and to assign those responsibilities to the Vice President of Student Affairs.

In a letter dated November 6, 2001, and written at the direction of Lomotey, Dr. Cynthia Sellers informed Homer that his services as Associate Vice President for Student Affairs would no longer be needed. Her letter advised, "You have the option of going back to the classroom effective spring semester, 2002. You will maintain your current salary through December 31, 2001. If you decide to teach, your salary will be $54,341.79 effective spring semester, 2002." On

November 9, 2001, Homer sent a cryptic one-sentence letter to Sellers informing her that "[t]he formula used to compute my salary for return to the classroom Spring Semester, 2002 is incorrect." Thereafter, Homer attempted without success to appeal the calculation of his new teaching salary.

In filing suit, Homer alleged that upon resuming his teaching duties, his revised salary of $54,341.79 failed to include the interim annual raises for his teaching position for the period that he worked in the administrative capacity. He contended that his revised nine-month academic year had been improperly calculated, resulting in the loss of salary and benefits.

In support of summary judgment, the BOR provided the testimony of Lomotey who testified that in calculating Homer's teaching salary for the spring semester, he applied the salary percentage increase of 3.49 which Homer would have received had he remained in the classroom in the 1998-1999 academic year which brought the salary up to $51,265. According to Lomotey, he then added an additional six percent increase, bringing Homer's nine-month salary up to $54,341. Lomotey testified that he had then compared Homer's new salary of $54,341 to salaries of similarly ranked associate professors. Lomotey confirmed that the pay range for associate professors campus-wide was $40,082 to $60,000, and that of the twenty-eight associate professors at Fort Valley, only eight associate professors received salaries greater than $54,341. He also ascertained that at the new salary, Homer would be the third highest paid faculty member and associate professor in the Department of Behavior Science. Lomotey also testified that the head of the Department of Behavior Science earned a salary of $59,472 for the 2001-2002 academic year and that three associate professors in Homer's department whom Fort Valley had employed for similar or longer periods than Homer earned between $40,082 and $53,692.

Finding the BOR entitled to judgment as a matter of law, the trial court entered summary judgment on its behalf. Homer appeals.

In his sole claim of error, Homer contends that material issues of fact remain for resolution as to whether the BOR breached the contract by reducing his salary to an amount and in a manner contrary to its own policies and bylaws which were incorporated into and made part of his employment contract. Homer contends that the BOR violated Section 302.03 and misapplied Section 803.1402 C. of its policy manual in calculating his salary for the teaching position.

The dispositive issues are matters of contract law. Under the rules of contract construction, where the language in an agreement is clear and unambiguous, no construction is required or permitted by the trial court. *Lothridge v. First Nat. Bank of Gainesville*, 217 Ga. App. 711, 714 (3) (a) (458 SE2d 887) (1995). Where the language of a

contract is clear and unambiguous and capable of only one reasonable interpretation, construction of a contract is a matter of law reserved for the trial court. *Amstadter v. Liberty Healthcare Corp.*, 233 Ga. App. 240, 242 (1) (503 SE2d 877) (1998). "[A]bsent ambiguity, we must look to the four corners of the document." *Equifax, Inc. v. 1600 Peachtree, LLC*, 268 Ga. App. 186, 191 (601 SE2d 519) (2004).

Looking at the four corners of the employment agreement at issue including the policies and bylaws incorporated therein, we find no ambiguity or uncertainty. Section 302.03 of the BOR's policy manual states in pertinent part:

> A faculty member who has academic rank and rights of tenure in the Corps of Instruction and who accepts an appointment to an administrative office . . . shall retain his/her academic rank and rights of tenure as an ex officio member of the Corps of Instruction but shall have no rights of tenure in the administrative office to which he or she has been appointed. *The additional salary, if any, for the administrative position shall be stated in the employment contract* and shall not be paid to the faculty member when he or she ceases to hold the administrative position. . . . Administrative officers shall be appointed by the president with the approval of the Board of Regents and shall hold office at the pleasure of the president.

(Emphasis supplied.) Homer claims that the salary stated in his 2001-2002 employment contract "was for the dual appointment of Associate Vice President and Associate Professor and [was] based on [his] nine month academic salary rate paid for twelve months instead of nine months." Homer argues that because no additional salary was stated for his administrative position, Lomotey's application of Section 803.1402 C. in adjusting his salary violated Section 302.03. He claims that his new teaching salary should have been calculated by converting the twelve-month salary for his administrative position into a nine-month salary.

Homer's strained construction of Section 302.03 overlooks the section's plain terms, i.e., if an employment contract states an additional salary for the administrative position, and the faculty member ceases to hold that administrative position, then the additional salary must likewise cease. Other than mandating the cessation of any additional salary, Section 302.03 does not address the computation or calculation of a faculty member's salary upon return to the classroom or to other university employment.

As proof that the BOR violated Section 302.03, Homer relied upon the testimony of Dr. Oscar L. Prater, the president of Fort Valley

from August 1990 until October 2001. Prater testified that in calculating Homer's salary for the administrative position, he had converted Homer's nine-month teaching salary to a twelve-month administrative salary by multiplying "$51,265.84 by 1.33, which came to $68,183.57." Then, at Homer's request, he had increased the new salary to "an even figure of $70,000." Prater further testified, "I explained to him that his twelve month salary at the time he returned to an academic appointment would be divided by the same figure, 1.33, used to convert his nine month salary to twelve months." Prater testified that he had used this method during his 11 years as president and that his predecessor had also used it.

It is a fundamental principle of contract construction that "in the absence of any ambiguity, parol evidence [is] not admissible to add to, take from, or vary the terms of the written contract." *Stephens v. Crittenden Tractor Co.*, 187 Ga. App. 545, 548 (1) (b) (370 SE2d 757) (1988). So, Homer's reliance upon Prater's testimony is misguided because nothing in the contract executed between the BOR and Homer indicates that the BOR agreed to bind itself to utilizing Prater's conversion formula. On the contrary, the contract stated that "[t]he administrative appointment is made expressly subject to the applicable State and Federal laws and to the statutes and regulations of this institution and to the Bylaws and Policies of the Board of Regents which are available for your inspection upon request." Homer has not cited and we have not found any reference in the BOR's policy manual or in its bylaws which mention the use of Prater's conversion formula or the use of any similar calculation. Homer was under contract with the BOR, not with Prater, and the face of the contract indisputably shows that when Prater executed the employment contract with Homer, Prater did so on behalf of the "Board of Regents of the University System of Georgia, By and on Behalf of Fort Valley State University." In the absence of ambiguity, and here there is none, Prater's testimony cannot be used to deviate from the express terms of the employment contract. See *Stephens*, supra.

Homer also argues that Section 803.1402 C. was inapplicable because it applies "only when the faculty member of a fiscal [year] appointment receives additional salary for the administrative appointment." Nothing in Section 803 provides for limiting its application to such a situation. Section 803.1402 C. of the policy manual states:

[w]hen a fiscal year administrative employee returns to an academic appointment as a faculty member, the salary shall be determined on the same basis as other faculty members with similar rank and experience within the department to

which he/she returns or in other similar positions within the institution.

As an administrative employee returning to an academic appointment as a faculty member, Homer's compensation was subject to the provisions of Section 803.1402 C. As such, his faculty teaching salary was required to be determined within the parameters of Section 803.1402 C. According to Lomotey's uncontradicted testimony, he calculated Homer's revised salary by basing it on the salaries of other faculty members with similar rank and experience in the department to which Homer returned. Therefore, Homer failed to show any error in the application of Section 803.1402 C. See *Walker v. Bd. of Regents &c. of Ga.*, 254 Ga. App. 15, 16 (1) (561 SE2d 178) (2002).

Lastly, Homer argues that even if this section did apply, Lomotey failed to determine his salary "on the same basis as other faculty members with similar rank and experience" because Lomotey did not include his merit raises for fiscal years 1998-1999 and 2000-2001, raises of 5 percent and 3.49 percent respectively. Homer's argument is unpersuasive because nothing in Section 803.1402 C. mandates the inclusion of individual merit raises in the process of calculating the salary for an academic appointment. Since Homer's revised teaching salary complied with the terms of his employment contract including the BOR's written policies, the trial court did not err in granting summary judgment to the BOR.

*Judgment affirmed. Ruffin, C. J., and Mikell, J., concur. Phipps, J., disqualified.*

DECIDED APRIL 8, 2005.

*Gordon & Boykin, Jerry Boykin*, for appellant.

*Thurbert E. Baker, Attorney General, Bryan K. Webb, Kimberly B. Lewis, Assistant Attorneys General*, for appellee.

