## A07A0175. AMERICAN WATER SERVICE USA v. McRAE.
(650 SE2d 304)

PHIPPS, Judge.

Gary T. McRae sued American Water Service USA ("AWS") for breach of a contract to which he was a third-party beneficiary. The trial court subsequently granted McRae's motion for summary judgment, and AWS appeals.[1] For reasons that follow, we reverse.

Summary judgment is appropriate when no genuine issue of material fact remains and the movant is entitled to judgment as a matter of law.[2] We review a grant of summary judgment de novo, construing "the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant."[3]

Viewed in this manner, the record shows that in 1990, McRae became a wastewater operator for the Glynn County Water and Sewer Department. He remained a Glynn County employee until 1999, when the County entered into a Water and Wastewater Systems Operations Agreement with AWS, a private contractor, for performance of the water treatment operations.[4]

Under the "personnel" section of that contract, AWS agreed to offer employment for a period of at least 18 months to designated County employees, including McRae, who were "ready, willing and able to work." The personnel section further provided, in pertinent part:

> No County employee hired by [AWS] shall be separated from [AWS's] employment during the stated eighteen (18) month period except for cause consistent with cause for separation under the County's Personnel Policy, as amended from time to time. . . . This section . . . may be enforced by any employee to whom it applies.

The County's written Personnel Policy specified "[i]nability or unfitness to perform assigned duties" as cause for dismissal.

McRae accepted AWS's employment offer. When AWS took over the plant in November 1999, however, it discovered that McRae had

---

[1] In a prior order, the trial court denied AWS's motion for summary judgment, and AWS has not enumerated that ruling as error on appeal. Accordingly, we will not address whether the trial court properly denied the motion filed by AWS. See *Branan v. State*, 285 Ga. App. 717, 722 (5), n. 29 (647 SE2d 606) (2007) (appellate jurisdiction limited to legal grounds enumerated as error on appeal).

[2] See *Kaesemeyer v. Angiogenix, Inc.*, 278 Ga. App. 434 (629 SE2d 22) (2006).

[3] Id.

[4] The original contract was executed by Philip Utilities Management, which assigned the contract to Azurix Georgia, Inc. AWS later merged with Azurix and was substituted for Philip Utilities Management in the agreement. For ease of discussion, we will refer only to AWS.

been working under medical restrictions relating to a prior back injury. Those restrictions prevented McRae from performing certain duties necessary to his job as a wastewater operator, such as climbing stairs to take samples from the water tanks. AWS further learned that during his County employment, McRae had asked other people to perform this job function for him.

In January 2000, McRae suffered another back injury, and his doctor and physical therapist instructed him to stay out of work for several weeks. When his physician released him to go back to work, he was again limited by his previous work restrictions, including the stair prohibition. At that point, AWS would not allow McRae to return to his job unless he could work without medical restrictions. In a subsequent letter, AWS terminated McRae's employment based on his inability to perform his assigned job duties, stating:

> The medical information which you recently provided to the Company confirms that you are only able to perform light duty or sedentary level work. Given the nature of the position, your work restrictions result in your inability to perform the essential requirements of the Treatment Operator II position.

McRae sued AWS, asserting that by terminating his employment, the company breached the personnel section of the Water and Wastewater Systems Operations Agreement, to which he was a third-party beneficiary. McRae subsequently moved for summary judgment. Specifically, he argued that the contract did not permit AWS to fire him if he could perform his job in the same manner he had performed it when employed by the County. The trial court agreed and granted McRae's motion. In its order, the trial court found that "the contract signed by [AWS] and Glynn County did not allow [AWS] to fire . . . [McRae] who was just as ready, willing and able to work when [AWS] took control of the plant as he was when Glynn County controlled operation of the plant."[5]

On appeal, AWS does not challenge McRae's right to enforce the contract terms as a third-party beneficiary. Instead, it argues that the Water and Wastewater Systems Operations Agreement and the County's written personnel policy authorized the dismissal.

"[T]he rights of a third person to sue on a contract made for his benefit depend on the terms of the agreement and are no greater than those granted by the contract as intended by the parties thereto."[6]

---

[5] (Footnotes omitted.)

[6] *Kaesemeyer*, supra at 437 (1) (punctuation omitted).

The beneficiary must bring himself within the terms of the contract.[7] Moreover, when the contract language is clear and unambiguous, construction of the agreement is a matter of law for the court, which must enforce the contract according to its clear terms.[8] In such circumstance, "the contract alone is looked to for its meaning."[9]

The contract language at issue here specifically permitted AWS to terminate an employee "for cause consistent with cause for separation under the County's Personnel Policy." The County policy authorized termination for "inability or unfitness to perform assigned duties." And the undisputed evidence shows that with his work restrictions, McRae could not perform certain wastewater operator duties.

As noted by the trial court, the County apparently permitted McRae to continue working as a wastewater operator, despite his limitations. Nothing in the Water and Wastewater Systems Operations Agreement, however, required AWS to retain an employee who could not fully perform his job. Rather, the clear terms of the contract allowed termination of such an employee, regardless of how the County had approached his employment.

We recognize that AWS initially hired McRae, arguably finding him at that point to be "able to work." Possibly raising a waiver argument, McRae vaguely suggested below that this initial hiring precluded his termination because his job performance remained the same. The record shows, however, that AWS discovered after it took over the plant that McRae could not discharge all job requirements. Moreover, it offered evidence that the manner in which McRae had been completing his job, including sending uncertified persons to collect samples from the water tanks, was "unsafe, unacceptable and unprofessional." Even if he sufficiently articulated a waiver theory, therefore, McRae has not shown that AWS waived the termination provision as a matter of law by hiring him.[10]

Given the unambiguous terms of the Water and Wastewater Systems Operation Agreement, the trial court erred in granting McRae summary judgment on his breach of contract claim.[11] Accordingly, we must reverse.

*Judgment reversed. Johnson, P. J., and Mikell, J., concur.*

---

[7] See id.

[8] See id. at 436; *Homer v. Bd. of Regents of the Univ. System of Ga.*, 272 Ga. App. 683, 685-686 (613 SE2d 205) (2005).

[9] *Kaesemeyer*, supra.

[10] See, e.g., *Young v. Oak Leaf Builders*, 277 Ga. App. 274, 277 (1) (626 SE2d 240) (2006) (waiver of a contract term may arise when facts show "an intentional relinquishment of a known right").

[11] See *Kaesemeyer*, supra at 437; *Homer*, supra at 688.

DECIDED JULY 6, 2007 —
RECONSIDERATIONS DENIED JULY 25, 2007 —

Brown, Readdick, Bumgartner, Carter, Strickland & Watkins, Terry L. Readdick, Paul M. Scott, for appellant.
Walter D. Adams, for appellee.