[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-14837
Non-Argument Calendar
_____

D.C. Docket No. 5:13-cv-00327-JHE

XINGZHONG SHI,
Frank,

Plaintiff-Appellant,

versus

TRENT MONTGOMERY,
DENIAL WIMS,
ANDREW HUGINE,
ALABAMA A&M UNIVERSITY BOARD OF TRUSTEES,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(February 10, 2017)

Before MARCUS, JORDAN and ROSENBAUM, Circuit Judges.

PER CURIAM:

Xingzhong Shi, a former associate professor at Alabama A&M University ("the University"), appeals the district court's grant of summary judgment in his suit alleging employment discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-2(a)(1), and violations of his constitutional rights.  On appeal, he argues that the district court erred by granting summary judgment against him on his claims that: (1) Dr. Trent Montgomery, former dean of the School of Engineering and Technology at the University, and Dr. Daniel Wims, provost and vice president of academic affairs, discriminated against him on the basis of his race, Asian, and national origin, Chinese, by terminating his employment; (2) the University violated Title VII by placing him on administrative leave and terminating him; and (3) Wims and Montgomery deprived him of his constitutional rights while acting under color of law, in violation of 42 U.S.C. § 1983.  After careful review, we affirm.

We review de novo the district court's grant of summary judgment, Weeks v. Harden Mfg. Corp., 291 F.3d 1307, 1311 (11th Cir. 2002), which, in this case, was resolved by consent by a magistrate judge.  Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, id., presents no genuine dispute as to any material fact and compels judgment as a matter of law.  Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  "The mere existence of a scintilla of evidence in support of the [non-

moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). While we construe pro se briefs liberally, a pro se litigant who offers no substantive argument on an issue in his initial brief abandons that issue on appeal. Timson v. Sampson, 518 F.3d 870, 874 (11th Cir. 2008).

First, we find no merit to Shi's argument that the district court erred by dismissing his Title VII claims against Montgomery and Wims. We have held that the relief granted under Title VII is against the employer, not against individual employees whose actions would constitute a violation. Dearth v. Collins, 441 F.3d 931, 933 (11th Cir. 2006). Supervisory employees are only proper defendants under Title VII in their capacity as agents of the employer, not as individuals. Hinson v. Clinch Cty. Bd. of Educ., 231 F.3d 821, 827 (11th Cir. 2000).

Shi generally argues on appeal that Montgomery discriminated against him by appointing Venkata Atluri as interim chair of the Computer Science department and that Wims discriminated against him by terminating his employment. But Shi does not address the district court's conclusion that Title VII does not provide for individual liability. Since he does not raise the issue of individual liability on appeal -- the ground the district court relied on to reject this claim -- he has abandoned his challenge to this claim. Timson, 518 F.3d at 874. And in any event, because Title VII does not provide relief against individual employees,

3

summary judgment was properly granted on the Title VII claims against Wims and Montgomery in their individual capacities.  Dearth, 441 F.3d at 933.

Next, we are unpersuaded by Shi's argument that the district court erred by granting summary judgment on his claim that the University violated Title VII by placing him on administrative leave and terminating him.  For starters, a person seeking to file a Title VII lawsuit must first file a timely charge with the EEOC alleging a Title VII violation and exhaust all remedies provided by the EEOC.  42 U.S.C. § 2000e-5; Wilkerson v. Grinnell Corp., 270 F.3d 1314, 1317 (11th Cir. 2001).  Charges must be in writing, be under oath or affirmation, and contain the information and be in the form the EEOC requires.  Id. § 2000e-5(b);  29 C.F.R. § 1601.3(a) (2000).  The verification requirement is mandatory, and the EEOC is not obligated to inform a claimant of deficiencies in a charge.  See Vason v. City of Montgomery, Ala., 240 F.3d 905, 907 (11th Cir. 2001).

While a claimant may fill out, and submit, an intake questionnaire prior to, and sometimes in lieu of a charge, the general rule is that the filing will not be deemed tantamount to a charge absent exceptional circumstances.  See, e.g., Wilkerson, 270 F.3d at 1317 (holding verified questionnaire sufficient to satisfy the charge requirement of Title VII's statute of limitations); Pijnenburg v. West Ga. Health Sys., Inc., 255 F.3d 1304, 1307 (11th Cir. 2001) (holding that unverified intake questionnaire did not satisfy statutory requirements for an

4

administrative "charge"). The applicable period for filing an EEOC charge of discrimination does not begin to run until the employee receives unequivocal notice of an adverse employment decision. Stewart v. Booker T. Washington Ins., 232 F.3d 844, 849 (11th Cir. 2000). The plaintiff has the burden of establishing that he filed a timely charge of discrimination. See Jackson v. Seaboard Coast Line R. Co., 678 F.2d 992, 1004-10 (11th Cir. 1982).

Whether a discriminatory act takes place in a "deferral" or "non-deferral" state affects the timeliness of the charge filed with the EEOC. See Maynard v. Pneumatic Prod. Corp., 256 F.3d 1259, 1262-63 (11th Cir. 2001). A "deferral" state is a state that has a law banning discrimination in employment and that has a state entity authorized to grant or deny relief for such discrimination. Id. Alabama is a non-deferral state. Ledbetter v. Goodyear Tire & Rubber Co., 421 F.3d 1169, 1178 (11th Cir. 2005), affirmed by, 127 S. Ct. 2162 (2007), superseded by statute on other grounds, Pub. L. No. 111-2, 123 Stat. 5 (2009). For a charge to be timely in non-deferral states, it must be filed within 180 days of the last discriminatory act. 42 U.S.C. § 2000e-5(e)(1); Wilkerson, 270 F.3d at 1317.

In reviewing Title VII claims based on circumstantial evidence, federal courts often use the three-step burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981). Reeves v. Sanderson Plumbing Prods., 530

U.S. 133, 141-42 (2000). This framework requires a plaintiff first to establish a prima facie case of discrimination. To do so for a discriminatory discharge claim, a plaintiff may show he: (1) was a member of a protected class, (2) was qualified for the job, (3) suffered an adverse employment action, and (4) was replaced by someone outside the protected class. Cuddeback v. Fla. of Educ., 381 F.3d 1230, 1235 (11th Cir. 2004). Alternatively, the plaintiff may show he (1) was a member of the protected class, (2) was fired or suspended, and (3) other employees not in the protected class who had comparable or lesser qualifications were retained. Nix v. WLCY Radio/Rahall Commc'ns, 738 F.2d 1181, 1185 (11th Cir. 1984). As another alternative, the plaintiff may show: (1) he was a member of a protected class; (2) he was qualified for the position; and (3) the misconduct for which he was discharged was nearly identical to misconduct engaged in by another employee, outside the protected class, who was retained. Id. Under the third formulation, the plaintiff may establish a prima facie case even if his replacement was also a member of the same protected class. Id. If a plaintiff alleges he was disciplined in a discriminatory manner compared to a similarly-situated employee, he must show that the other employee engaged in nearly identical misconduct, so that courts do not second-guess employers' reasonable decisions or confuse apples with oranges. Rioux v. City of Atlanta, 520 F.3d 1269, 1280 (11th Cir. 2008).

By making a prima facie case, a plaintiff creates a rebuttable presumption that the employer has discriminated against him. EEOC v. Joe's Stone Crabs, Inc., 296 F.3d 1265, 1272 (11th Cir. 2002). The burden then shifts to the employer, which can rebut this presumption by proffering a legitimate, non-discriminatory reason for its employment decision. Id. If the employer does so, the burden shifts back to the plaintiff to show that the employer's proffered reason was a pretext for discrimination. Id. at 1273. An employee's violation of a company's work rules may constitute a legitimate, non-discriminatory reason for termination. See Sparks v. Pilot Freight Carriers, Inc., 830 F.2d 1554, 1563 (11th Cir. 1987).

Ultimately, an employer's burden to articulate a non-discriminatory reason for failing to promote an employee is a burden of production, not of persuasion. Burdine, 450 U.S. at 254; Perryman v. Johnson Prods. Co., 698 F.2d 1138, 1142 (11th Cir. 1983) (describing this burden as "exceedingly light"). So long as the employer articulates a clear and reasonably specific non-discriminatory basis for its actions, it discharges its burden of production. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 509-11 (1993). This means that the inference of discrimination drops out of the case entirely, and the plaintiff has the opportunity to show by a preponderance of the evidence that the proffered reasons were pretextual. Id.

In Title VII cases where pretext is an issue, the factfinder must ask if the employer's proffered reasons were a "coverup" for a discriminatory decision.

Rojas v. Fla., 285 F.3d 1339, 1342 (11th Cir. 2002) (quotation omitted). We do not answer whether employment decisions were prudent or fair, but only whether unlawful discriminatory animus motivated a challenged employment decision. Damon v. Fleming Supermarkets of Fla., Inc., 196 F.3d 1354, 1361 (11th Cir. 1999). On the totality of the evidence, a plaintiff must cast sufficient doubt on the defendant's proffered non-discriminatory reasons to allow a reasonable factfinder to determine that the defendant's proffered legitimate reasons did not actually motivate its conduct. Silvera v. Orange Cty. Sch. Bd., 244 F.3d 1253, 1258 (11th Cir. 2001). We consider whether the plaintiff's showing of weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action would allow a reasonable factfinder to find them unworthy of credence. Combs v. Plantation Patterns, Meadowcraft, Inc., 106 F.3d 1519, 1538 (11th Cir. 1997). A subjective reason for an employer's action -- like poor interview performance -- can be as legitimate as any other reason. Chapman v. AI Transport, 229 F.3d 1012, 1033 (11th Cir. 2000) (en banc).

If the proffered reason is one that might motivate a reasonable employer, the plaintiff must meet the reason proffered "head on and rebut it." Id. at 1030. On the other hand, it is permissible for the factfinder to infer the ultimate fact of discrimination from the falsity of the employer's explanation. Hinson, 231 F.3d at 831. If the employer's asserted justification is that the employee violated a work

rule, the employee must prove pretext by showing either that he did not violate the work rule or that, if he did, other employees not within the protected class who engaged in similar acts were not similarly treated. Sparks, 830 F.2d at 1563.

Here, the district court correctly granted summary judgment on Shi's Title VII claims based on his claims of pre-2012 discrimination. As the record shows, Shi filed an EEOC charge concerning these claims on March 23, 2012. Shi has conceded that his EEOC charge was untimely as to the claims concerning the University's decisions to not place him in a tenure track position in 2007 and to not appoint him as interim chair of the Computer Science department in 2010. As for the claim concerning his administrative leave, he learned about the leave on August 24, 2011, but did not file his EEOC charge until 211 days later, well after the 180-day limit. In addition, the earlier intake questionnaire he filed was not made under oath or affirmation, and, therefore, was not a charge within the statutory requirements. 42 U.S.C. § 2000e-5(b); Pijnenburg, 255 F.3d at 1307. Because Shi's EEOC charge was not filed within 180 days after the 2007, 2010 and 2011 decisions, the district court correctly concluded that Shi did not exhaust his administrative remedies for these claims. Wilkerson, 270 F.3d at 1317.

Shi also failed to state a prima facie case of discrimination concerning his termination. Notably, he did not allege that someone outside his protected class replaced him or that someone who committed similar misconduct was retained.

9

Cuddeback, 381 F.3d at 1235; Nix, 738 F.2d at 1185. He repeatedly named as a comparator Jay Gangasani, whom he said was not within the protected class and was retained. But the only evidence Shi submitted about Gangasani was his own questions in the interrogatories, which did not include any answers that could be considered evidence to support the claim that Gangasani was a similarly-situated employee. Without evidence of Gangasani's race, national origin, employment status, or qualifications, Shi did not show that he was replaced by someone outside the protected class, that employees outside the protected class were treated differently, or that an employee outside the protected class who engaged in nearly identical misconduct was not terminated. Cuddeback, 381 F3d at 1235; Nix, 738 F.2d at 1185. He therefore failed to establish a prima facie case of discrimination.

But even if Shi made a prima facie case, he did not refute the University's legitimate, non-discriminatory reasons for his termination. First, the University cited several emails Shi had sent to numerous faculty members that compared Montgomery to foreign dictators and called him a "dictatorial leader" who "abused his power" and violated "democracy." Second, the University cited Shi's behavior at a college-wide meeting, where he had disparaged Montgomery and insisted upon Montgomery's resignation in an aggressive and angry manner, such that other faculty members had felt threatened by Shi's behavior and were concerned for Montgomery's safety. In fact, Shi acknowledged in his summary judgment

10

motion and in a responsive pleading that he was terminated due to his behavior at the college-wide meeting.  And in a letter to the Grievance Committee, he said his administrative leave was "due to my behavior at the college-wide meeting."

As for his claim that the University never "convicted" him of any wrongdoing, it is irrelevant since we do not examine whether an employer's decision to terminate was prudent or fair.  Damon, 196 F.3d at 1361.  Moreover, the University's faculty handbook provided that employees who engaged in misconduct or who potentially posed a danger to others could be placed on administrative leave immediately and indefinitely.  It also said that non-tenured faculty could be terminated at any time with three weeks' notice and that the University had no obligation to renew their employment contracts upon expiration. In short, the University acted consistently with its stated policies, and Shi offers no evidence that the real reason for his termination was his race or national origin or that the University's stated reason for terminating him was so implausible or false as to suggest pretext.  Combs, 106 F.3d at 1538.  The district court correctly granted summary judgment on this claim.

Finally, we reject Shi's argument that the district court erred in granting summary judgment on his § 1983 claims involving Wims and Montgomery.  To prevail in a § 1983 civil rights action, a plaintiff must show a person acting under color of state law deprived him of a federal right.  Griffin v. City of Opa-Locka,

261 F.3d 1295, 1303 (11th Cir. 2001).  Section 1983 creates no substantive rights; it merely provides a remedy for deprivations of federal statutory and constitutional rights.  Almand v. DeKalb Cty., 103 F.3d 1510, 1512 (11th Cir. 1997).

The substantive component of the Due Process Clause of the Fourteenth Amendment protects those rights that are "fundamental" -- that is, rights that are implicit in the concept of ordered liberty.  McKinney v. Pate, 20 F.3d 1550, 1556 (11th Cir. 1994).  Because employment rights are state-created rights and are not fundamental rights created by the Constitution, they do not enjoy substantive due process protection.  Id. at 1559.

State-created employment rights are, however, protected by procedural due process requirements.  Id. at 1560.  A successful due process claim depends upon a constitutionally-protected property interest in the expectation of continued employment or of a liberty interest having been infringed upon by the state; absent these interests, no due process protections attach.  Gray v. Bd. of Regents of the Univ. Sys., 150 F.3d 1347, 1350 (11th Cir. 1998).  In other words, an employee must show not only a desire for continued employment, but an entitlement to it.  Id.  A university professor without tenure does not have a property right entitled to protection under the due process clause.  Id. at 1352-53.  Similarly, a prospective promotion is not a property or liberty interest protected by the due process clause.  Wu v. Thomas, 847 F.2d 1480, 1485 (11th Cir. 1988).

12

The state may not demote or discharge a public employee in retaliation for speech protected by the First Amendment. Bryson v. City of Waycross, 888 F.2d 1562, 1565 (11th Cir. 1989). But a public employee's freedom of speech is not absolute. Id. To assess a First Amendment retaliatory discharge claim, the court first examines the content, form, and context of the employee's speech to decide if it addresses a matter of public concern. Id. If so, the court weighs the employee's First Amendment interests against the interest of the state, as an employer, in promoting the efficiency of the public services it performs through its employees. Id. The First Amendment does not require a public employer to tolerate a vulgar, embarrassing, vituperative, ad hominem attack, even if the attack touches on a matter of public concern. Mitchell v. Hillsborough Cty., 468 F.3d 1276, 1288 (11th Cir. 2006). If the manner and content of an employee's speech is demeaning, disrespectful, rude, and insulting, and is perceived that way in the workplace, the government employer is within its discretion to take disciplinary action. Id.

If the public employee prevails on the balancing test, the fact-finder next determines whether the employee's speech played a substantial part in the government's decision to demote or discharge the employee. Bryson, 888 F.2d at 1565. Fourth, if the employee prevails by showing that the speech was a substantial motivating factor in the state's employment decision, the state must

13

prove by a preponderance of the evidence that it would have reached the same decision even in the absence of the protected conduct. Id. at 1566.

Here, summary judgment was warranted on Shi's § 1983 claims. First, because Shi could not show that his termination, the University's failure to promote him, or its failure to consult him before reorganizing infringed on any of his fundamental rights, he did not allege any violations of substantive or procedural due process. As we've said, state-created employment rights are not protected by the Constitution. McKinney, 20 F.3d at 1560. Moreover, Shi could not show he had a property right to or liberty interest in a promotion or continued employment since he was not tenured. Gray, 150 F.3d at 1352-53; Wu, 847 F.2d at 1485.

Nor did Shi's First Amendment retaliatory discharge claim have merit. While his speech opposing Montgomery's position as dean arguably touched on a matter of public concern, it was an embarrassing, vulgar, vituperative, ad hominem attack that was perceived in the workplace as disrespectful, demeaning, insulting, and rude. Mitchell, 468 F.3d at 1288. For example, in the emails Shi sent to Montgomery and several other faculty members, Shi urged Montgomery to resign, following the example of Egyptian President Hosni Mubarak; compared Montgomery to Mubarak and Libyan leader Muammar Gaddafi; and accused Montgomery of being a "dictatorial leader" who went against "democracy." Not only did Shi repeatedly compare Montgomery to tyrannical dictators in these

14

emails, but Shi also spoke against Montgomery at the college-wide meeting in terms so disrespectful that other faculty worried for Montgomery's safety.

On this record, we are compelled to conclude that the interest of the University, as an employer, in promoting the efficiency of the public services it performs through its employees outweighed Shi's free speech interests. Bryson, 888 F.2d at 1565. It was also well within the University's discretion to take disciplinary action, including placing Shi on administrative leave and not renewing his employment. Mitchell, 468 F.3d at 1288. Because there was no genuine issue of material fact as to whether the University violated Shi's constitutional rights when it placed him on administrative leave and then terminated him, the district court correctly granted summary judgment on his § 1983 claims.

**AFFIRMED**.