[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
August 25, 2004
THOMAS K. KAHN
CLERK

No. 03-12634

D. C. Docket No. 01-01650 CV-T-30-TBM

SANDY CUDDEBACK,

Plaintiff-Appellant,

versus

FLORIDA BOARD OF EDUCATION,
UNIVERSITY OF SOUTH FLORIDA
BOARD OF TRUSTEES,
UNIVERSITY OF SOUTH FLORIDA,

Defendants-Appellees.

Appeal from the United States District Court
for the Middle District of Florida

(August 25, 2004)

Before DUBINA and HILL, Circuit Judges, and OWENS\*, District Judge.

_____
*Honorable Wilbur D. Owens, Jr., United States District Judge for the Middle District of
Georgia, sitting by designation.

DUBINA, Circuit Judge:

Appellant Sandy Cuddeback appeals the district court's order granting summary judgment to the Florida Board of Education, the University of South Florida Board of Trustees, and the University of South Florida (collectively the "University") on her gender discrimination claim brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2.[1] For the reasons that follow, we affirm.

## I. BACKGROUND

A. Facts

Cuddeback, a female, was a graduate student at the University of South Florida, conducting cancer research in the laboratory of Dr. Hong Gang Wang, a University professor. Cuddeback's course work obligations required her to complete a rotation in three laboratories. The University provided the equipment and training. However, much of Cuddeback's work in the laboratory was done for the purpose of completing her dissertation and satisfying her program's publishing requirements. She received a stipend and benefits for her work, as well as sick and annual leave. A comprehensive collective bargaining agreement also

---

[1] Cuddeback also alleged that the University violated the Florida Civil Rights Act, Fla. Stat. § 760.01. On appeal, however, she does not challenge the district court's grant of summary judgment on this state law claim.

governed her employment relationship. In her first year at the laboratory, the University's Department of Pharmacology and Therapeutics funded her stipend of $15,000 with a waiver of tuition. After Cuddeback's first year, Dr. Wang's individual faculty research grant funded Cuddeback's work. While Cuddeback received a stipend for her work, the record does not reflect the amount.

Dr. Wang evaluated Cuddeback's performance on a semi-annual basis, and his evaluation was included in her general academic evaluation presented to her by the University. The department faculty gave Cuddeback the highest possible rating in her September 1998, May 1999, and October 1999 evaluations. According to Cuddeback in the fall of 1999, Dr. Wang told her that she was his best student and had the most potential of all the students in the department.

However, Dr. Wang stated that, beginning in late 1999, he informed Cuddeback of his concerns regarding her attendance, lab notebooks, and lack of communication. In his March 10, 2000, evaluation of Cuddeback, Dr. Wang commented on her "(1) failure to obey necessary instructions, (2) unstable productivity due to changes of mood, (3) argumentative without scientific standpoint, (4) disrespect to colleagues, and (5) lack of focusing on the project." Furthermore, both Michael Lee, another research assistant, and a lab technician,

who worked with Cuddeback in Dr. Wang's lab, stated that they observed conflicts between Dr. Wang and Cuddeback.

The University asserts that, in January 2000, Dr. Wang asked Cuddeback to improve in several areas. The University alleges that, after such request, Cuddeback told Dr. Wang that she would leave his lab at the end of the semester. Cuddeback alleges, however, that Dr. Wang informed her in January 2000 that she would be leaving his lab at the end of April. On April 3, 2000, Cuddeback sent a message to a Dr. Polson advising him of a severe hand injury and requesting time off until April 10, 2000. She did not notify Dr. Wang of the injury or request a leave of absence. Dr. Polson then attempted to notify Cuddeback by certified letter that Dr. Wang was unaware of the reasons for her absence and to request that Cuddeback contact Dr. Wang immediately to discuss the matter. Cuddeback did not accept the certified letter containing this request, despite three delivery attempts. Cuddeback testified that she thought that the matter was none of Dr. Wang's concern.

On May 1, 2000, after Cuddeback applied for a full-time job with Hilton Reservations Worldwide,[2] Cuddeback requested a leave of absence from Dr.

---

[2] The University argues that full-time employment outside of the graduate program is a violation of the program's requirements.

4

Krzanowski, acting chair of the University's Department of Pharmacology and Therapeutics, again without informing Dr. Wang. Dr. Krzanowski granted the request through August 1, 2000. However, on May 9, 2000, Dr. Wang wrote Cuddeback informing her that her lack of improvement in the areas identified in her evaluation and her absence from his lab since April 20, without notice to him, would result in the nonrenewal of her appointment. Cuddeback does not dispute that she failed to show up in Dr. Wang's lab after April 20, 2000,[3] but Cuddeback claims that she kept Dr. Wang apprized of her efforts to obtain a medical leave of absence.[4]

After Cuddeback left Dr. Wang's lab, Hirohito Yamaguchi, a male, took over Cuddeback's research duties. Yamaguchi had joined the lab in March 2000 and worked on his own research projects, but then finished Cuddeback's research project after she left the lab for publication of a journal article. Cuddeback alleges that Dr. Wang paid Yamaguchi to finish the research project initiated by Cuddeback from the stipend funds that originally were to be paid to her. The

---

[3] Cuddeback attempts to counter the University's assertion that she failed to show up in the lab after January 19, 2000. However, because the University asserted only that Cuddeback failed to show up after April 20, 2000, Cuddeback's counter-argument regarding her physical presence in the lab between January 19, 2000, and April 20, 2000, is irrelevant. Dr. Wang concedes that he does not know how much time Cuddeback spent in the lab between January and April.

[4] Cuddeback's testimony here seems inconsistent with her testimony that she thought that the matter was not any of Dr. Wang's concern.

5

University alleges that none of the money appropriated as Cuddeback's stipend was used to pay Yamaguchi. However, the district court found from the evidence that "Hirohito Yamaguchi took over plaintiff's position in Dr. Wang's lab after she was terminated. Dr. Wang paid Yamaguchi to complete the experiments and research Plaintiff worked on from Dr. Wang's stipend money that was previously allocated to pay the Plaintiff." [R. Vol. 1 at Tab 60].

B. Procedural History

Cuddeback filed a complaint alleging gender discrimination in violation of Title VII. The University moved for summary judgment arguing that Title VII did not apply because Cuddeback was a student rather than an employee; that Cuddeback failed to establish a prima facie case because she did not show that she was qualified for her job and performed satisfactorily, suffered an adverse employment action, and was treated less favorably than similarly-situated males; and that Cuddeback did not show that the University's articulated reason for terminating her employment was a pretext for discrimination. Cuddeback attempted to demonstrate a prima facie case through three alternative theories. First, Cuddeback argued that she was qualified for her job, terminated, and replaced by a male. Second, Cuddeback argued that, at the time of her termination, the defendants retained Lee, a comparable or lesser qualified male

employee. Third, Cuddeback argued that Lee, a similarly-situated employee, engaged in nearly identical misconduct without being terminated.

In granting the University's motion for summary judgment, the district court found that Cuddeback was an employee for Title VII purposes because the University supervised her, provided the equipment that she used, paid her biweekly, and gave her sick and annual leave. The district court also supported its finding with the additional facts that a comprehensive collective bargaining agreement covered her employment relationship, and that the decision to terminate her was an employment, not an academic, decision. The district court then found that Cuddeback failed to establish a prima facie case of gender discrimination because Lee was not a similarly-situated or comparable employee. The district court did not consider Cuddeback's alternative arguments regarding her prima facie case, including that (1) she was a member of a protected class; (2) she was qualified for the job; (3) she suffered an adverse employment action; and (4) she was replaced by someone outside the protected class. The district court also did not examine whether the University had articulated a legitimate, nondiscriminatory reason for Cuddeback's termination or whether the proffered explanation was pretextual.

Cuddeback then perfected this appeal.

## II.  ISSUES

(1) Whether the district court erred in determining that Cuddeback was an employee for the purposes of Title VII.

(2) Whether the district court erred in granting summary judgment on Cuddeback's gender discrimination claim.

## III.  STANDARD OF REVIEW

This court reviews a grant of summary judgment *de novo*.  *Levinson v. Reliance Standard Life Ins. Co.*, 245 F.3d 1321, 1325 (11th Cir. 2001).

## IV.  DISCUSSION

A.  A Title VII "Employee"

The University argues that Cuddeback was not an employee for purposes of Title VII.  Title VII defines an "employee" as "an individual employed by an employer."  42 U.S.C. § 2000e(f).  This court has not addressed the specific issue of whether a graduate student assistant constitutes an employee for purposes of Title VII.  However, generally, this circuit has adopted the "economic realities" test to determine whether a Title VII plaintiff is an employee.  *See Cobb v. Sun*

8

*Papers, Inc.*, 673 F.2d 337, 340-41 (11th Cir. 1982). Under this test, the term "employee" is "construed in light of general common law concepts" and "should take into account the economic realities of the situation," "viewed in light of the common law principles of agency and the right of the employer to control the employee." *Id.* Specifically, the court should consider factors such as whether the defendant directed the plaintiff's work and provided or paid for the materials used in the plaintiff's work. *Id.* at 341. Because the question presented is whether Cuddeback, as a graduate research assistant, is an "employee," we conclude that the economic realities test should apply.

Applying the economic realities test, the fact that much of Cuddeback's work in Dr. Wang's lab was done for the purpose of satisfying the lab-work, publication, and dissertation requirements of her graduate program weighs in favor of treating her as a student rather than an employee. However, the following facts weigh in favor of treating Cuddeback as an employee for Title VII purposes: (1) she received a stipend and benefits for her work; (2) she received sick and annual leave; (3) a comprehensive collective bargaining agreement governed her employment relationship with the University; (4) the University provided the equipment and training; and (5) the decision not to renew her appointment was based on employment reasons, such as attendance and communication problems,

rather than academic reasons. Although the record does not indicate the amount that she was paid for the year in which she was terminated, the record does demonstrate that she was paid during that year, and was also paid $15,000 in her first year with Dr. Wang.

Courts that have considered whether graduate students constitute employees for the purposes of Title VII have distinguished between their roles as employees and as students, and have typically refused to treat them as "employees" for Title VII purposes only where their academic requirements were truly central to the relationship with the institution. *Compare Stilley v. University of Pittsburgh of the Commonwealth Sys. of Higher Educ.*, 968 F. Supp. 252, 261-62 (W.D. Pa. 1996) (finding that a plaintiff was an employee when she was a student researcher); *Ivan v. Kent State Univ.*, 863 F. Supp. 581, 585-86 (N.D. Ohio 1994) (finding that a graduate student researcher was an employee where she was under an employment contract, was paid biweekly, and had retirement benefits withheld); *with Jacob-Mua v. Veneman*, 289 F.3d 517, 520-21 (8th Cir. 2002) (concluding that a volunteer graduate student researcher was not an employee because she was not financially compensated for her work); *Pollack v. Rice Univ.*, 28 Fair Empl. Prac. Cas. 1273 (S.D. Tex. 1982) (finding that paid research or instruction by the plaintiff was "attendant to his capacity as a graduate student" because it was a

10

central part of the graduate program and, therefore, the plaintiff's status was that of "student" rather than "employee"). Therefore, even though Cuddeback's course work obligations required her to complete a rotation in three laboratories and much of her work in Dr. Wang's lab was to fulfill the program's requirements, the economic realities of this particular situation lead us to conclude that the district court correctly found that Cuddeback was an employee for Title VII purposes. *See United States v. New York City*, 359 F.3d 83 (2d Cir. 2004) (holding, in an analogous situation and in the first circuit ruling of its kind, that people required to work to receive welfare benefits are employees entitled to federal protection against sexual and racial harassment because the benefits they receive constitute remuneration for their work and because they meet the other elements of the common law definition of employee).

B. Cuddeback's Gender Discrimination Claim

To establish a prima facie case of discriminatory discharge, the plaintiff must show that she (1) was a member of a protected class, (2) was qualified for the job, (3) suffered an adverse employment action, and (4) was replaced by someone outside the protected class. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142, 120 S. Ct. 2097, 2106, 147 L. Ed. 2d 105 (2000) (applying the familiar *McDonnell Douglas* burden-shifting framework in an age discrimination case).

11

Once a plaintiff has established a prima facie case of discrimination, the burden shifts to the employer to offer a nondiscriminatory legitimate reason for the adverse employment action. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04, 93 S. Ct. 1817, 1824-25, 36 L. Ed. 2d 668 (1973). The burden then shifts back to the plaintiff to show that the employer's stated reason was a pretext for discrimination. *Id.* If the plaintiff does not satisfy her burden of establishing a genuine issue of material fact that the employer's reason was pretextual, the grant of summary judgment in favor of the employer is proper. *See Combs v. Plantation Patterns*, 106 F.3d 1519, 1529 (11th Cir. 1997).

This court may affirm a judgment on any legal ground, regardless of the grounds addressed and relied upon by the district court. *See National R.R. Passenger Corp. v. Roundtree Transp. and Rigging*, 286 F.3d 1233, 1263 (11th Cir. 2002) (explaining that an appellate court may affirm the district court's grant of summary judgment "as long as the judgment entered is correct on any legal ground regardless of the grounds addressed, adopted, or rejected by the district court") (internal quotation and citation omitted).

Cuddeback established a prima facie case of gender discrimination by showing that (1) she is a female; (2) she was qualified for the job; (3) the University terminated her employment; and (4) someone outside the protected

12

class replaced her.  *See Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1185 (11th Cir. 1984).  Because a male, Hirohito Yamaguchi, took over Cuddeback's research duties when she was terminated, the district court erred in finding Cuddeback failed to establish a prima facie case.  *See Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1529 (11th Cir. 1987).  However, the grant of summary judgment in the University's favor was otherwise proper because the record clearly demonstrates that Cuddeback failed to establish pretext.[5]

The University met its burden of showing a nondiscriminatory reason for the employment action by proffering that Cuddeback was terminated for performance issues.  Cuddeback then attempted to show that the University's reason was pretextual by arguing that the University's statements were inconsistent.  For example, Cuddeback argues that the abrupt change in Dr. Wang's opinion of her performance, the lack of any convincing explanation for the sudden negative view of her performance, the lack of any meaningful opportunity for her to improve any perceived deficiencies in her performance, and the lack of support for Dr. Wang's views by other faculty members all evidence

---

[5]If we were so inclined, we could remand the pretext issue to the district court to consider in the first instance.  However, where the record is so clear as to the final outcome of the case and is sufficiently developed for us to decide the issue, we conclude that a remand here would be a waste of time and judicial resources.

pretext. However, the record clearly shows that the change in Dr. Wang's opinion occurred over a span of at least five months; Dr. Wang performed the evaluation detailing the deficiencies in early March and listed ways for Cuddeback to improve; Dr. Wang began discussing the deficiencies in Cuddeback's work with her as early as January; Cuddeback admits that she did not go to the lab after April 20, 2000; and Cuddeback did not inform Dr. Wang of the reasons for her absence. Therefore, we conclude from the record that Cuddeback failed to demonstrate that the University's nondiscriminatory reasons were pretextual. Accordingly, the district court's grant of summary judgment was proper.

## V. CONCLUSION

We hold that the economic realities test should be used to determine whether a person acting as a graduate research assistant is an employee for the purposes of Title VII. Applying that test to this case, we conclude that Cuddeback was an employee. However, because we conclude from the record that Cuddeback cannot demonstrate that the University's nondiscriminatory reasons for her discharge were pretextual, Cuddeback's gender discrimination claim fails and the district court properly granted summary judgment in favor of the University.

**AFFIRMED.**