[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 27, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-11321
Non-Argument Calendar

_____

D. C. Docket No. 05-23106-CV-JAL

JOHNNY LAMOTHE,

Plaintiff-Appellant,

versus

BAL HARBOUR 101 CONDOMINIUM ASSOCIATION INC.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(March 27, 2008)**

Before DUBINA, CARNES and BARKETT, Circuit Judges.

PER CURIAM:

Appellant Johnny Lamothe ("Lamothe") appeals the district court's grant of

summary judgment in favor of Bal Harbour 101 Condominium Association, Inc. ("Bal Harbour") and denial of his motion to amend the complaint in his employment discrimination lawsuit, which alleged discrimination based on race and national origin, filed pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-2(a); the Florida Civil Rights Act ("FCRA"), Fla. Stat. §§ 760.01-760.11; and 42 U.S.C. § 1981.

## I. BACKGROUND

On February 1, 2005, Lamothe was fired from his job as a valet parking supervisor at Bal Harbour. At the time of his firing, Donald Molina ("Molina"), Lamothe's supervisor, referring to a note that Lamothe had written, allegedly stated that "only a Haitian with brain cancer would write a note like that." Then, Molina allegedly told Lamothe "I think you don't deserve to work here. You should get a job at $6.50 at McDonald's like the other niggers." Later, Molina came out of his office and saw that Lamothe was still present. He then allegedly said "Didn't I fire you? What are you still doing here? Didn't I tell you to get a job with the other niggers at McDonald's at $6.50 an hour?"

Following this exchange, which was during the middle of Lamothe's shift, Lamothe left work. The next day Molina telephoned Lamothe to apologize for the incident and asked Lamothe to return to work. Lamothe responded that he did not

2

want to work with Molina. That same day, Lamothe spoke on the telephone with Thomas Hart, the General Manager of Bal Harbour, who also apologized to Lamothe and asked him to return to work. Lamothe declined this offer.

Lamothe initiated this lawsuit on November 30, 2005. On November 16, 2006, Bal Harbour filed a motion for summary judgment. On February 27, 2007, Lamothe filed a motion to amend his complaint. The court granted Bal Harbour's motion and denied Lamothe's motion on March 13, 2007.

## II. ISSUES

1) Whether the district court properly granted Bal Harbour's summary judgment motion.

2) Whether the district court properly denied Lamothe's motion to amend the complaint.

## III. STANDARDS OF REVIEW

We "review the grant of summary judgment *de novo* viewing the facts and drawing all reasonable inferences in favor of the nonmoving party." *Rowell v. BellSouth Corp.*, 433 F.3d 794, 798 (11th Cir. 2005).

We review a district court's denial of a motion to amend for abuse of discretion. *Smith v. Sch. Bd. of Orange County*, 487 F.3d 1361, 1366 (11th Cir. 2007).

3

## IV. DISCUSSION

A. *Motion for Summary Judgment*

In granting summary judgment, the district court held that Lamothe had failed to present direct evidence of discrimination, and thus, in order to proceed past the summary judgment phase, Lamothe had to use the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). Under this framework, a plaintiff can establish a *prima facie* case of discriminatory discharge under Title VII by showing that he "(1) was a member of a protected class, (2) was qualified for the job, (3) suffered an adverse employment action, and (4) was replaced by someone outside the protected class." *Cuddeback v. Fla. Bd. of Educ.*, 381 F.3d 1230, 1235 (11th Cir. 2004).[1] The court held that Lamothe had failed to show that he had suffered an adverse employment action. Because Lamothe could not establish a *McDonnell Douglas* prima facie case, the court granted summary judgment.

On appeal, Lamothe argues that he had indeed set forth direct evidence of a discriminatory discharge, and furthermore, even if direct evidence was not presented, he had established that an adverse employment action had occurred.

---

[1] Allegations of discrimination brought under § 1981 and the FCRA are analyzed under the same framework applicable to Title VII cases. *Bass v. Bd. of County Comm'rs Orange County, Fla.*, 256 F.3d 1095, 1109 n.4 (11th Cir. 2001).

After reviewing the record and the parties' briefs, we conclude that Lamothe is correct on both of these issues.

"Only the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of some impermissible factor constitute direct evidence of discrimination." *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1086 (11th Cir. 2004) (internal quotations and citations omitted). "If the alleged statement suggests, but does not prove, a discriminatory motive, then it is circumstantial evidence." *Id.* (citations omitted).

In this case, the issue is whether Molina's statements directed at Lamothe at the time of the discharge amount to direct evidence of discrimination. The district court found that Molina's statements were not direct evidence. We disagree. When statements displaying discriminatory animus are directed at an employee and made contemporaneously with an adverse employment action toward that employee, those statements constitute direct evidence of discrimination. Thus, Molina's statements that "only a Haitian with brain cancer would write a note like that," and that Lamothe should "get a job at $6.50 at McDonald's like the other niggers"—statements made contemporaneously with Lamothe's discharge—are indeed direct evidence of discrimination based on race and national origin.

The district court also erred in determining that no adverse employment

5

action occurred. "A proposed action that is corrected as soon as the proper official is made aware of it and before it goes into effect, so that the employee does not actually suffer any consequence, is not 'adverse.'" *Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 588 (11th Cir. 2000). The district court reasoned that since an offer to reinstate was made the day after Lamothe was fired, no adverse action had occurred. However, as *Gupta* indicates, the correction must occur before the proposed action "goes into effect." In this case, viewing the facts in a light most favorable to the plaintiff, Lamothe was simply terminated on February 1, 2005. There was no "proposal" for action to later "go into effect"; the proposal to fire Lamothe went into effect immediately. Hence, we conclude that the district court erred in finding that an adverse action had not occurred.

B. *Motion to Amend*

Lastly, Lamothe argues on appeal that the district court erred by denying his motion to file an amended complaint because his constructive discharge claim arose out of the same conduct set forth in the original complaint and Bal Harbour would not have been prejudiced by the amendment. If a motion for leave to amend is filed after the deadline set in a scheduling order issued pursuant to Rule 16 of the Federal Rules of Civil Procedure, the motion is governed first by Rule 16(b). *Smith v. Sch. Bd. of Orange County*, 487 F.3d 1361, 1366-67 (11th Cir. 2007).

6

According to Rule 16(b), district courts are required to enter a scheduling order that "limit[s] the time to join other parties, [and] amend the pleadings." FED. R. CIV. P. 16(b)(3)(A). "[W]here a party's motion to amend is filed after the deadline for such motions, . . . the party must show good cause why leave to amend the complaint should be granted." *Smith*, F.3d at 1366. In the event that good cause for an untimely amendment is shown, the Federal Rules of Civil Procedure provide that, prior to trial, the district court "should freely give leave [to amend the complaint] when justice so requires." FED. R. CIV. P. 15(a)(2).

Given the untimeliness of Lamothe's motion and his complete lack of a showing of good cause, we conclude that the district court did not abuse its discretion in denying Lamothe the opportunity to amend his complaint before the court ruled on the summary judgment motion.

## V. CONCLUSION

For the above stated reasons, we conclude that the district court erred in determining that Lamothe had not presented direct evidence of discrimination and had not suffered an adverse employment action. We affirm, however, the district court's denial of Lamothe's motion to amend.

**VACATED and REMANDED in part; AFFIRMED in part.**