[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-15282
Non-Argument Calendar
_____

D.C. Docket No. 3:16-cv-00117-HES-JRK

JESSICA ALEXANDER,

Plaintiff - Appellant,

versus

SONNY'S REAL PIT BAR-B-Q,
BAR-B-Q MANAGEMENT, INC.,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(July 26, 2017)

Before JORDAN, ROSENBAUM and JILL PRYOR, Circuit Judges.

PER CURIAM:

When applying for a job at Sonny's Real Pit Bar-B-Q, Jessica Alexander

said she had no criminal history.  In fact, she had been convicted of manslaughter.

Bar B-Q Management, Inc. ("BBQM"), which managed the Sonny's location at which Alexander worked, eventually learned the truth about her criminal history; shortly thereafter, it discharged her. While investigating Alexander, BBQM accessed public records of Alexander's conviction and conducted a background check. Alexander sued BBQM and Sonny's for accessing her criminal records without having received her permission; sex- and age-based employment discrimination; and wrongful termination. The district court granted summary judgment to BBQM and Sonny's on all counts. After careful review, we affirm.

## I.    FACTUAL BACKGROUND

In 1989, Alexander was charged with second-degree murder. She pled guilty to a lesser manslaughter charge, a second-degree felony, and was sentenced to serve six years in prison, of which she served 16 months. In 2005, Alexander filed an application for restoration of her civil rights with the Florida Parole Commission.[1]

In May 2008, Alexander applied for a job as a cook at Sonny's, a restaurant located on University Boulevard in Jacksonville, Florida. Alexander's job application asked: "Have you ever been convicted, pled guilty or no contest, or had adjudication withheld on a felony or any crime involving dishonesty?"

---

[1] The Florida Parole Commission was renamed the Florida Commission on Offender Review in 2014. *See* 2014 Fla. Laws ch. 191, § 1.

2

Alexander Application (Doc. 18-2 at 7).[2]  Alexander marked the box next to this question signifying "No."  *Id.*  The application also contained the following statement:

> I certify that the information provided in this Application, and that I will provide in seeking employment, is true and complete and that I will update any information that changes.
>
> I understand that false or misleading information given in this Application or during interviews may result in disqualification from consideration for employment or discharge in the event of employment. . . .
>
> I understand and agree that if I am hired, my employment is "AT-WILL," which means that my employment is for no definite period of time and either the Company or I may terminate the employment relationship with or without cause at any time, with or without any advance notice.  I understand that only the Company President may change the AT-WILL status of any applicant or employee and may only do so in writing. . . .
>
> **I HEREBY ACKNOWLEDGE AND UNDERSTAND THE NOTICE AS DESCRIBED ABOVE AND THAT IF I AM HIRED I WILL BE AN AT-WILL EMPLOYEE.**

*Id.* at 8.  Alexander signed the application.  At the time Alexander applied for the job, BBQM did not conduct criminal background checks on applicants for non-managerial positions.  As such, it did not conduct a criminal background check on Alexander or otherwise confirm the accuracy of her answer regarding her criminal history.  BBQM hired Alexander as a cook in June 2008.

---

[2] Citations to "Doc." refer to the numbered entries in the district court record of the case.

3

In February 2013, Donni Weaver, BBQM's Human Resources Director, received a request for verification of Alexander's employment from the Florida Parole Commission in connection with Alexander's application for restoration of her civil rights. Weaver testified in her declaration that she was unable to review the request immediately. The Commission made a second inquiry in March. Suspecting that Alexander may have given BBQM false information about her criminal history, Weaver accessed Duval County's publicly available criminal court records on March 18. She discovered Alexander's manslaughter conviction and prison sentence.

Two days later, Alexander met with BBQM's Area Director, John Raineri, who asked her about her criminal history. At this meeting, Alexander authorized BBQM to conduct a background check. Raineri suspended Alexander, effective immediately, pending a review of her employment application. Later that day, Alexander provided Raineri with records in her possession regarding the details of her conviction. Alexander testified by deposition that in the weeks before her suspension, David Sneed, her direct supervisor and general manager, began to push her out of his way, tell her that she moved too slowly, sling food around, and call her a criminal.

With Alexander's authorization, Weaver ordered a third-party background check on Alexander, which revealed no additional information. Weaver asked

4

Alexander whether she had truthfully described her criminal history on the application.  After Weaver read Alexander the application question, Alexander asked Weaver whether BBQM would have hired her had she told them of her criminal background.  Soon thereafter, BBQM discharged Alexander.  Weaver testified by declaration that she and BBQM's Chief Executive Officer, Chip Dixon, based their decision to discharge Alexander solely on her false statement in her job application, not on her criminal background itself.  Weaver also testified that Sneed played no role, advisory or otherwise, in the decision to discharge Alexander.

Alexander filed a charge of discrimination against BBQM and Sonny's with the Equal Employment Opportunity Commission (EEOC).[3]  The EEOC, unable to conclude that Sonny's or BBQM had violated the law, dismissed Alexander's charge.  It informed Alexander in its notice of dismissal that she could sue Sonny's and BBQM.

Alexander, proceeding *pro se*, filed a complaint against BBQM and Sonny's in Florida state court, and the defendants removed the lawsuit to the district court.  She later amended her complaint to state claims for sex and age discrimination in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.*, and the

---

[3] Though Alexander identified only Sonny's as respondent in her charge form, the EEOC appears to have understood Alexander to have brought charges against both Sonny's and BBQM.

Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*; violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*; and wrongful termination under Florida law.  The district court granted BBQM's motion for summary judgment on all counts.  Alexander timely appealed.

## II.    STANDARD OF REVIEW

The district court must grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  This court reviews *de novo* a district court's grant of summary judgment, applying the same legal standards as the district court.  *Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc).  In reviewing a district court's grant of summary judgment, we consider all the facts and reasonable inferences in the light most favorable to the non-moving party.  *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1303 (11th Cir. 2009).

"*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed."  *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998).  "[L]iberal construction," however, "is not the same thing as wholesale redrafting."  *Gilmore v. Hodges*, 738 F.3d 266, 281 (11th Cir. 2013).

6

## III.    ANALYSIS

**A.    The District Court Did Not Err in Granting Summary Judgment to the Defendants on the Race and Age Discrimination Claims Because Alexander Failed to Show that Their Stated Reason for Terminating Her Was Pretextual.**

Alexander argues that the district court erred in granting summary judgment to BBQM on her claims of sex- and age-based discriminatory discharge under Title VII and the ADEA.  She fails, however, to identify evidence sufficient to create a genuine issue of material fact as to whether the stated reason for discharging her— that is, her false statement on her job application—was pretextual.  The district court thus did not err in granting the defendants summary judgment.

Absent direct evidence, we apply *McDonnell Douglas Corp. v. Green*'s burden-shifting framework in reviewing discriminatory discharge claims under Title VII and the ADEA.  411 U.S. 792, 802-04 (1973); *Sims v. MVM, Inc.*, 704 F.3d 1327, 1332-33 (11th Cir. 2013).  The plaintiff must first establish a prima facie case of discriminatory discharge.  *Cuddeback v. Fla. Bd. of Educ.*, 381 F.3d 1230, 1235 (11th Cir. 2004).  To make a prima facie case of sex discrimination, a plaintiff must show:  "(1) she belongs to a protected class; (2) she was subjected to adverse employment action; (3) her employer treated similarly situated employees outside her classification more favorably; and (4) she was qualified to do the job." *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1091 (11th Cir. 2004).  "To make a prima facie case of age discrimination, the employee must show:  (1) [s]he was a

7

member of the protected group between the age of forty and seventy; (2) [s]he was subject to an adverse employment action; (3) a substantially younger person filled the position from which [s]he was discharged; and (4) [s]he was qualified to do the job from which [s]he was discharged." *Liebman v. Metro. Life Ins. Co.*, 808 F.3d 1294, 1298 (11th Cir. 2015).

Once a plaintiff establishes the prima facie case, an employer can rebut the presumption of discrimination by stating "a nondiscriminatory legitimate reason" for the discharge. *Cuddeback*, 381 F.3d at 1235. "The employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason." *Nix v. WLCY Radio/Rahall Commc'ns*, 738 F.2d 1181, 1187 (11th Cir. 1984). Moreover, the employer "need not persuade the court that it was actually motivated by the proffered reasons," but must only offer evidence that "raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Perryman v. Johnson Prod. Co.*, 698 F.2d 1138, 1142 (11th Cir. 1983) (internal quotation marks omitted).

If the employer rebuts the plaintiff's prima facie case, "[t]he burden then shifts back to the plaintiff to show that the employer's stated reason was a pretext for discrimination." *Cuddeback*, 381 F.3d at 1235. "The plaintiff [must] cast doubt on the defendant's proffered nondiscriminatory reasons sufficient to allow a reasonable factfinder to determine that the defendant's proffered legitimate reasons

8

were not what actually motivated its conduct." *Silvera v. Orange Cty. Sch. Bd.*, 244 F.3d 1253, 1258 (11th Cir. 2001) (internal quotation marks omitted).

Assuming Alexander stated a prima facie case of discriminatory discharge, the defendants met their burden of stating a legitimate, nondiscriminatory reason for discharging Alexander based on her false statement regarding her criminal history in her job application. Alexander acknowledged during her deposition that she had falsely stated on her job application that she had never been convicted of a felony, and the application itself warned Alexander that she could be discharged for providing false answers.

Alexander has offered no evidence that would allow a trier of fact to find that the defendant's stated reason for discharging her was pretextual. She asserts that Sneed harassed her prior to her discharge, but she alleged that this harassment was due to her criminal history, not her membership in any protected class. She also asserts she was the only cook to be singled out for a criminal background check, yet she identifies no other employee about whom the Florida Parole Commission contacted the defendants. Alexander has failed to show the existence of a genuine issue of material fact as to whether the defendants discharged her for any reason other than her falsified job application. Accordingly, the district court

properly granted summary judgment to BBQM on Alexander's Title VII and ADEA discriminatory discharge claims.[4]

## B.    The District Court Properly Concluded that Alexander's FCRA Claim Is Time-Barred.

Alexander argues that the district court erred in granting the defendants summary judgment on her claim that they violated the FCRA by accessing her criminal record.  She did not, however, raise her claim within two years of discovering the alleged violation, as the FCRA requires, and so her claim was untimely.  The district court thus properly granted summary judgment to the defendants.

The FCRA prohibits any entity from procuring a consumer report for employment purposes without first (1) disclosing to the consumer its intent to procure the report and (2) receiving the consumer's authorization to do so.  15 U.S.C. § 1681b(b)(2).  A consumer must bring an action under the FRCA "not later than the earlier of — (1) 2 years after the date of discovery by the plaintiff of the violation that is the basis for such liability; or (2) 5 years after the date on which the violation that is the basis for such liability occurs."  *Id.* § 1681p.  "[T]he discovery rule . . . allow[s] a claim to accrue when the litigant first knows *or with*

---

[4] Because we conclude that Alexander cannot show that the defendants' stated reason for discharging her was pretextual, we need not decide whether Alexander exhausted her administrative remedies before bringing her Title VII and ADEA claims in federal court.

*due diligence should know* facts that will form the basis for an action." *Merck & Co. v. Reynolds*, 559 U.S. 633, 646 (2010) (internal quotation marks omitted).

During her deposition, Alexander acknowledged that she discovered the defendants had accessed her criminal record on March 20, 2013, when she met with Raineri. She did not raise her FCRA claim, however, until she filed her amended complaint on October 2, 2015. Alexander argues that § 1681p allowed her to raise her claim within *either* (1) two years of discovering the defendants' alleged FCRA violation *or* (2) five years of the alleged violation's occurrence, but a consumer must raise her FCRA claim "not later than the earlier of" these dates. 15 U.S.C. § 1681p. She also asserts she could not have raised her claim within two years of discovering BBQM's alleged violation because the EEOC had not yet authorized her to sue. Although "a private plaintiff must . . . receive statutory notice from the EEOC of his or her right to sue" to "institute[e] a Title VII action," *Forehand v. Fla. State Hosp. at Chattahoochee*, 89 F.3d 1562, 1567 (11th Cir. 1996), no such notice is required to file a claim under the FCRA. *Compare* 42 U.S.C. § 2000e-5(f)(1) *with* 15 U.S.C. § 1681p. Because Alexander did not raise her FCRA claim within two years of discovering the alleged violation, her claim

11

was untimely; the district court did not err in granting summary judgment to the defendants.[5]

## C. The District Court Properly Granted Summary Judgment on Alexander's Wrongful Employment Claim Because Her Employment Was at Will.

Alexander argues that the district court erred in granting summary judgment to the defendants on her Florida law claim for wrongful termination. "The established rule in Florida is that when the term of employment is discretionary or indefinite, either party may terminate the employment at any time for any reason or no reason without assuming any liability." *Hartley v. Ocean Reef Club, Inc.*, 476 So. 2d 1327, 1328 (Fla. Dist. Ct. App. 1985). "[A]n 'at will' employee . . . can be terminated for any or no reason and, thus, as a matter of law c[an] not state a cause of action for wrongful termination." *Walton v. Health Care Dist. of Palm Beach Cty.*, 862 So. 2d 852, 855 (Fla. Dist. Ct. App. 2003). Alexander asserts that she

---

[5] Had Alexander timely brought her FCRA claim, she would still fail to identify a genuine issue of material fact supporting an FCRA violation. The FCRA prohibits an employer from accessing any "consumer report" without receiving a consumer's authorization. 15 U.S.C. § 1681b(b)(2)(A). A "written, oral, or other communication of any information" does not qualify as a "consumer report" unless it was communicated "by a consumer reporting agency." *Id.* § 1681a(d)(1). An entity is not a "consumer reporting agency" unless it "assembl[es] or evaluat[es] consumer credit information or other information on consumers" either "for monetary fees" or "dues," or "on a cooperative nonprofit basis." *Id.* § 1681a(f). The defendants could not have violated the FCRA by accessing Duval County's website; because the County is not a "consumer reporting agency" within the FRCA's meaning, information regarding Alexander's criminal record made available on its website cannot qualify as a "consumer report." *Id.* § 1681a(d)(1), (f). Moreover, the undisputed facts show that Alexander consented to the third-party background check that the defendants ordered. For these reasons, the district court's grant of summary judgment to the defendants on Alexander's FCRA claim would have been proper even had she timely brought it.

was not an at-will employee because her lengthy tenure of employment, regular job promotions, and history of positive performance reviews established an implied contract with the defendants for non-at-will employment. She identifies no evidence of a non-at-will employment contract, however. Indeed, Alexander's job application expressly stated that her employment would be at-will, and that only BBQM's president could change her at-will status, and only in writing. *See Hartley*, 476 So. 2d at 1328. She thus has no wrongful termination claim under Florida law. *Walton*, 862 So. 2d at 855. The district court did not err in granting the defendants summary judgment on this claim.

## IV.  CONCLUSION

For these reasons, we affirm the district court's grant of summary judgment in all respects.

**AFFIRMED.**

13