[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-12672
Non-Argument Calendar

_____

D.C. Docket No. 5:17-cv-00220-RH-GRJ

WILLIE BRICE WARE,

Plaintiff-Appellant,

versus

CITY OF PANAMA CITY, FLORIDA,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(March 13, 2019)

Before JILL PRYOR, NEWSOM, and ANDERSON, Circuit Judges.

PER CURIAM:

Willie Ware appeals the district court's grant of summary judgment in favor of his former employer, the City of Panama City, Florida, in his employment discrimination suit.[1]  Ware, who is African-American, contends that racial animus led Panama City to terminate his employment as a recreation worker after he asked another employee to "clock in" for him when he was running late for work, in violation of the City's "Safe Harbor" policy on timekeeping.  On appeal, Ware argues that the district court incorrectly concluded that he failed to establish a *prima facie* case of discrimination, claiming that Panama City was significantly more lax in enforcing the policy with similarly-situated white employees.  After careful review of the record, we conclude that the district court properly granted the City's motion for summary judgment, and therefore affirm.[2]

We start first with the question whether Ware has established a *prima facie* case of discrimination under the burden-shifting framework of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973).  Ware may establish a *prima facie* case of discrimination by demonstrating (1) that he is a member of a protected class, (2)

---

[1] In addition to his Title VII disparate-treatment claim, Ware brought suit under 42 U.S.C. § 1981(a) and the Florida Civil Rights Act, Flat. Stat. § 760.10(1)(a).  Because Title VII's framework guides our analysis under both § 1981(a) and FCRA, we will focus exclusively on Title VII throughout this opinion.  *See Holland v. Gee*, 677 F.3d 1047, 1055 n.1 (11th Cir. 2012) (citation omitted); *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998).

[2] We review *de novo* the district court's grant of summary judgment.  *Holloman v. Mail-Well Corp.*, 443 F.3d 832, 836 (11th Cir. 2006).  "Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact and compels judgment as a matter of law in favor of the moving party."  *Id.* at 836–37.

that he was qualified for his position, (3) that he was fired or otherwise subject to an adverse employment action, and (4) that his employer treated similarly-situated employees outside of his protected class differently when they engaged in comparable conduct. *Holifield v. Reno*, 115 F.3d 1555, 1561–62 (11th Cir. 1997), *abrogated on other grounds by Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006); *Nix v. WLCY Radio/Rahall Commc'ns*, 738 F.2d 1181, 1185 (11th Cir. 1984). A plaintiff can establish a *prima facie* case even if—as is true here—his replacement is a member of the protected class. *Nix*, 738 F.2d at 1185.

The parties first dispute whether Ware has identified any similarly situated white employees who were treated more favorably by Panama City. "The plaintiff and the employee [he] identifies as a comparator must be similarly situated in all relevant respects." *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1091 (11th Cir. 2004) (citation and internal quotation marks omitted). For cases involving alleged disparities in discipline, we evaluate whether the plaintiff and his proffered comparators engaged in comparable misconduct and yet were punished differently. *See Burke-Fowler v. Orange Cty., Fla.*, 447 F.3d 1319, 1323 (11th Cir. 2006).

We agree with the district court that Ware has not identified any suitable comparators here. Ware contends that all Panama City employees that use the Kronos time keeping system are similarly situated, "as each [is] required to comply with the City's time keeping rules." Painting with this broad brush, Ware purports

3

to identify several white Panama City police department employees who engaged in questionable time keeping practices without losing their jobs.  But even if these employees were accused of comparable misconduct, they are not proper comparators.  Kim Pilcher, Panama City's HR director, justified Ware's termination from his recreation-worker job based on her "one strike you're out" philosophy concerning acts of "theft" and "dishonesty" against the City.  She "did not have any authority" to discipline police department employees, however, as any such authority rested solely with the Chief of Police.  The fact that Ware and the police department employees to whom he points were subject to the jurisdiction of different supervisors who applied the Safe Harbor policy differently indicates that the employees are not suitable Title VII comparators.  *See Jones v. Gerwens*, 874 F.2d 1534, 1541 (11th Cir. 1989) (agreeing with those courts that have held that "disciplinary measures undertaken by different supervisors may not be comparable for purposes of Title VII analysis").  Ware has not identified any other comparators, and thus the district court correctly held that he has not established a *prima facie* case of discrimination under *McDonnell Douglas*.

Even if we were to conclude that Ware has provided evidence that white comparators were treated more favorably, summary judgment was nevertheless proper because Ware has failed to show that Panama City's justifications were pretextual.  *See Cuddeback v. Fla. Bd. of Educ.*, 381 F.3d 1230, 1236 & n.5 (11th

Cir. 2004) (concluding, as an independent ground for affirming the grant of summary judgment, that the plaintiff had not established pretext, regardless of the district court's *prima facie* analysis).  To establish pretext, Ware must show "not just that [Panama City's] proffered reasons for firing [him] were ill-founded but that unlawful discrimination was the true reason." *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1267 (11th Cir. 2010).

Ware has not established that "unlawful discrimination was the true reason" for Panama City's decision. *Id.*  In its motion for summary judgment, the City stated that it was necessary to terminate Ware because he "attempted to falsify time records and commit theft from the City by receiving compensation for time spent at work when [he] was not actually present at work," thereby "knowing[ly] and intentional[ly] attempt[ing] to defraud the City."  Ware has not sufficiently cast doubt on the legitimacy of this explanation.  It is particularly difficult to do so here, as the Safe Harbor Policy—by its plain terms—deems it a "serious violation" for any "employee or supervisor to instruct another employee to incorrectly or falsely report hours worked."

It may be that Pilcher's zero-tolerance approach is, as Ware characterizes it, "harsh or unreasonable."  But in the absence of discrimination, Title VII does not provide a remedy for "harsh" employment decisions. *See Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000) (opining that "[f]ederal courts do not sit as a

5

super-personnel department that reexamines an [employer's] . . . decisions[, n]o matter how medieval [an employer's practices]") (citation and internal quotation marks omitted).  Ware has not met his burden to establish pretext here.

Finally, Ware has not presented the sort of "convincing mosaic of circumstantial evidence" of Panama City's discriminatory intent that would otherwise allow his claims to withstand summary judgment.  *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011) (internal quotation omitted).  Ware cites the fact that Pilcher's decision "went against the recommendations of the . . . chain of command, who suggested suspension without pay or a disciplinary . . . write up."  But nothing in the record suggests that this ran against her usual practice.  In fact, as noted by the district court, "Pilcher has never failed to terminate an employee over whom she had termination authority if she learned the employee stole or attempted to steal time."  The record shows, for instance, that Pilcher fired or accepted the resignations of three white employees pursuant to her zero-tolerance policy.  The evidence falls well short of a "convincing mosaic" here.

**AFFIRMED**.