[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-13512
Non-Argument Calendar

_____

D.C. Docket No. 4:17-cv-00050-MW-CAS

JENNIFER LYNN JOHNSON,

Plaintiff-Appellant,

versus

FLORIDA DEPARTMENT OF CORRECTIONS,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(September 28, 2020)

Before WILSON, MARTIN, and LAGOA, Circuit Judges.

PER CURIAM:

Jennifer Johnson appeals the district court's order granting summary

judgment to her former employer, the Florida Department of Corrections

("FDOC"), on her claims of gender and disability discrimination and retaliation. Johnson also appeals the denial of her post-judgment motion for reconsideration. She raises several arguments in support of her appeal.[1]  First, she argues that the district court erroneously granted summary judgment because she was constructively discharged as the result of gender and disability discrimination, as well as duress, coercion, and material misrepresentation.  Second, she argues that the district court erred in not considering evidence related to the threat of arrest and her actual arrest as material adverse actions supporting her retaliation claim.

We affirm the district court's order as to both of Johnson's claims.  The district court properly granted summary judgment to the FDOC on Johnson's gender and disability discrimination claims because evidence did not show that she was constructively discharged; was coerced; or that the FDOC induced her to resign by way of misrepresentation.  And although the district court did not discuss all of the evidence submitted by Johnson in support of her retaliation claims, there is no indication it did not consider it.  This includes the evidence that Johnson was arrested after her employment with the FDOC ended.  The district court therefore did not err by granting FDOC summary judgment on Johnson's retaliation claims.

---

[1] In addition to the procedural and substantive challenges described below, Johnson summarily raised other arguments, including whether the district court erred by (1) finding that she did not establish prima facie cases of disability discrimination and retaliation, and (2) denying her motion for reconsideration.  However, because Johnson fails to adequately brief the arguments, they are abandoned.  See Sapuppo v. Allstate Floridian Ins. Co., 739 F.3d 678, 681 (11th Cir. 2014).

## I.

Johnson began working for the FDOC in 2005. She was employed as a correctional officer at Franklin Correctional Institution (FCI) throughout her career. Early in Johnson's career, she had positive performance reviews and was recognized for her good work. Johnson says everything changed in 2010, when she noticed FCI's culture change to become centered around "a 'good ol' boy' club based on family relations or sex." She started having conflicts with her supervisors and co-workers, especially Lieutenant Wilburn Messer. Messer became Johnson's Captain and shift supervisor in 2014.

Johnson said she suffered "continued harassment" from Messer, including sexual harassment and reprimands based on false allegations. In particular, Johnson was reprimanded on November 24, 2015 for pushing a prisoner. A few days after the alleged pushing incident, she requested a counseling referral to the Employee Assistance Program (EAP) to help her cope with emotional distress. She went on leave on November 28, 2015. While on leave, Johnson filed a response to the pushing complaint, saying the incident never happened. In light of her response, FDOC gave Johnson a mandatory counseling referral to the EAP concerning "the well-being of others." As a result of this referral, Johnson had to attend a certain number of EAP counseling meetings while she was on medical leave. She never came back to work.

3

One other incident in Johnson's work history stands out and is relevant to her claim on appeal. On July 15, 2015, a few months before the alleged pushing incident, one of Johnson's co-workers, Andrea Woodberry, filed a complaint against Johnson, claiming Johnson pointed an AR-15 rifle at Woodberry and some prisoners while Johnson was working in the yard. The FDOC assigned Inspector James Padgett to conduct a criminal investigation of this complaint. On May 10, 2016, while Johnson was still on leave, FCI's Warden arranged for Johnson to speak with Padgett. During that meeting, Padgett read Johnson her Miranda rights and informed Johnson she was under investigation for pointing a weapon at someone. After meeting with Padgett, the Warden spoke with Johnson. The Warden told Johnson she was not compliant with the mandatory EAP requirements. Johnson responded that she had been compliant. The Warden then told her that "it was in [Johnson's] best interest to resign." Johnson had been carrying resignation papers in her car for some time, not sure when to use them. Now in response to the Warden's comment she went to her car to retrieve the resignation letter, and tendered her resignation.

Later, Padgett arrested Johnson for aggravated assault with a deadly weapon. She was charged with two counts of assault. One of the charges was dropped and the other was reduced to a misdemeanor with the adjudication withheld.

Johnson filed suit against FDOC, claiming disability discrimination, gender discrimination, retaliation, retaliation in violation of Florida's whistleblower statute, and false arrest.  Following discovery, FDOC moved for summary judgment based primarily on one defense: that Johnson voluntarily resigned.  The district court granted summary judgment to the FDOC.  Rather than addressing Johnson's discrimination and retaliation claims separately, the district court found that the threshold issue in the case was whether Johnson was constructively discharged.

First, the district court found that, even viewing the evidence in the light most favorable to her, Johnson failed to meet the standard for constructive discharge because she chose to resign.[2]  The court found Johnson could not have been under intolerable conditions that would force her into resignation in May 2016, because she had been away from work for more than five months prior to her resignation.  The district court also found that Johnson's grievances before her November 2015 leave of absence did not constitute constructive discharge because the circumstances were not so unbearable a reasonable person would be compelled to resign.  The circumstances Johnson alleged were that she was not given her preferred job responsibilities and duties.  This fell short of a constructive discharge.  Second, the district court found there was no coercion or duress in

_____

[2] The district court implicitly dismissed Johnson's hostile work environment claim.

5

Johnson's resignation because she prepared her resignation letter before the May 2016 meeting with the Warden and the Warden did not threaten to arrest her at that meeting. Rather, the district court said Johnson was exercising her free will to resign, and as a result was not subjected to an adverse employment action. The court therefore granted summary judgment to the FDOC on Johnson's discrimination and retaliation claims. The district court declined to exercise supplemental jurisdiction over Johnson's remaining state law claim and remanded that claim to state court.

## II.

We review de novo a district court's grant of a motion for summary judgment, viewing the evidence in the light most favorable to the non-moving party. Weeks v. Harden Mfg. Corp., 291 F.3d 1307, 1311 (11th Cir. 2002). Summary judgment requires the movant to show "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). All evidence is viewed in the light most favorable to the non-movant. Weeks, 291 F.3d at 1311. We review the denial of a motion under Rule 59 or Rule 60 for an abuse of discretion. Mays v. U.S. Postal Service, 122 F.3d 43, 46 (11th Cir. 1997) (per curiam) (Rule 59); Lambrix v. Sec'y, Fla. Dep't of Corr., 851 F.3d 1158, 1170 (11th Cir. 2017) (Rule 60).

6

**III.**

Johnson says the district court also erred in granting summary judgment to FDOC on her retaliation claim. She argues the district court disregarded evidence that both the threat of her arrest and her actual arrest were material adverse actions supporting a prima facie case for her retaliation claim.

To make out a prima facie case of retaliation, the plaintiff must show: (1) she engaged in statutorily protected activity; (2) she suffered a materially adverse action; and (3) there was a causal connection between the two events. See Chapter 7 Trustee v. Gate Gourmet, Inc., 683 F.3d 1249, 1258 (11th Cir. 2012). In the retaliation context, an action is materially adverse when it is "harmful to the point that [it] could well dissuade a reasonable worker from making or supporting a charge of discrimination." See Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 57, 126 S. Ct. 2405, 2409 (2006) (interpreting Title VII).

The district court did not specifically address Johnson's retaliation claim. This is not surprising, however, because Johnson did not point to any facts to show she suffered an adverse employment action. A party asserting a fact must support it by "citing to particular parts of materials in the record, including depositions." Fed. R. Civ. P. 56(c). If the evidence a party relies on is inadequate to support the asserted fact, the district court may disregard it. See Pace v. Capobianco, 283 F.3d 1275, 1280–81 (11th Cir. 2002).

7

On appeal, Johnson points to two purported adverse actions: (1) Padgett's threat to arrest her during their meeting on May 10; and (2) Johnson's actual arrest following her resignation.  Neither helps Johnson show FDOC retaliated against her.

First, as described above, the record is completely devoid of evidence of threat of an arrest.  The transcript of Padgett's and Johnson's meeting does not reflect any threat to arrest Johnson.[3]  Johnson did not testify that Padgett threatened her.  The fact that Padgett read Johnson her Miranda rights did not mean he was arresting her.  Rather, a Miranda-rights reading relates to "the admissibility of incriminating statements provided by a criminal suspect during 'custodial interrogation.'"  United States v. Phillips, 812 F.2d 1355, 1359 (11th Cir. 1987) (per curiam) (quoting Miranda v. Arizona, 384 U.S. 436, 444, 86 S. Ct. 1602, 1612 (1966)).  There is no evidence of Padgett's threat to arrest Johnson.

Second, Johnson does not appear to have put the district court on notice that she was proffering her actual arrest as an adverse employment action.  At summary judgment Johnson referenced her arrest, but only in reference to FDOC's "continued" retaliation and "harassment."  Since it did not know Johnson was

---

[3] In the transcript, Padgett informed Johnson that she had "been identified as a suspect" in a criminal case in which the charge was aggravated assault.  Johnson asserted her right to counsel and the interview ended.

relying on this fact to prove an adverse employment action against her, the district court can't be said to have disregarded the arrest as evidence relevant on that point.

The fact that Johnson did not assert her actual arrest as an adverse employment action before the district court has consequences for her appeal. Access Now, Inc. v. Sw. Airlines Co., 385 F.3d 1324, 1329 (11th Cir. 2004) (holding that plaintiff abandoned new theory raised for the first time on appeal). But even assuming Johnson properly preserved this argument, it is still due to be dismissed on the merits. We have said "[a]n employment action is considered 'adverse' only if it results in some tangible, negative effect on the plaintiff's employment." Shotz v. City of Plantation, 344 F.3d 1161, 1181 (11th Cir. 2003) (quotation marks omitted). Johnson's arrest had no negative effect on her employment because by the time she was arrested, she was no longer employed by FDOC.

Thus, even though the district court failed to independently address Johnson's retaliation claim, the district court did not err in granting summary judgment to FDOC.

## IV.

Johnson's discrimination and retaliation claims all turn on whether she suffered an adverse employment action. In her case, that means we must determine whether her resignation was involuntary such that it constitutes an

adverse employment action.  See Cuddeback v. Fla. Bd. of Educ., 381 F.3d 1230, 1235–36 (11th Cir. 2004) (recognizing that termination is an adverse employment action sufficient to support a prima facie case of discrimination).  Although "employee resignations are presumed to be voluntary," a "constructive discharge" is involuntary.  See Hargray v. City of Hallandale, 57 F.3d 1560, 1567–68 (11th Cir. 1995) (per curiam) (quotation marks omitted).  "[W]hen an employee involuntarily resigns in order to escape intolerable and illegal employment requirements to which he or she is subjected because of race, color, religion, sex, or national origin, the employer has committed a constructive discharge."  Morgan v. Ford, 6 F.3d 750, 755 (11th Cir. 1993) (per curiam) (quotation marks omitted).

Johnson says the district court erred by finding she was not constructively discharged as a result of: (1) intolerable working conditions; (2) coercion or duress; and (3) Padgett's deception and misrepresentation of material fact.

A.    INTOLERABLE WORKING CONDITIONS

Johnson says the district court improperly "watered down" the evidence she submitted to prove her working conditions were intolerable.  That evidence includes the following: her co-workers and supervisors ridiculed her and called her "crazy"; she was subjected to Messer's sexual harassment; she was assigned to duties that exacerbated her anxiety—which her supervisors knew about—and required her to increase the dosage of her anxiety medications; and FDOC forced

10

her into mandatory EAP counseling and prevented her from working at all. Based on these facts, Johnson also asserts she has met the standard to show a hostile work environment.

First, the sex- or gender-related conduct is not sufficiently severe or pervasive. "This circuit has required pervasive conduct by employers before finding that a hostile work environment existed or a constructive discharge occurred." Hipp v. Liberty Nat'l Life Ins. Co., 252 F.3d 1208, 1231 (11th Cir. 2001) (per curiam). Any sexually charged comments Johnson alleges Messer made took place over a period of "[p]robably about two months." Johnson testified that Messer wanted to "meet up" and that he made comments about her breasts. Under this Circuit's precedent, Johnson has failed to show sufficiently pervasive conduct to constitute a hostile or intolerable work environment.[4]

Second, the remaining evidence Johnson relies on does not show that her conditions were so intolerable as to compel resignation. See Morgan, 6 F.3d at 755

---

[4] Compare Mendoza v. Borden, Inc., 195 F.3d 1238, 1247–48 (11th Cir. 1999) (en banc) (holding no sex-based hostile work environment where male supervisor (1) told female employee he was "getting fired up"; (2) rubbed his hip against employee's hip while smiling and touching her shoulder; (3) twice made a sniffing sound while looking at employee's groin area and one instance of sniffing without looking at her groin; and (4) constantly followed employee and stared at her in a very obvious manner) with Morgan, 6 F.3d at 752, 756 (holding there was a material question of fact about whether conditions were intolerable where male supervisor (1) repeatedly invited female employee out; (2) directed several inappropriate and suggestive remarks at employee; (3) hovered around employee's work station for 3–4 hours at a time; and (4) directed co-workers to send employee messages telling her how much supervisor missed her and that she should drop sexual harassment charges because "no one would believe her").

11

("[A] plaintiff "must demonstrate that her working conditions were so intolerable that a reasonable person in her position would be compelled to resign." (quotation marks omitted and alterations adopted)).  Instead of being stripped of all responsibility, Johnson was assigned to different duties.  See Poole v. Country Club of Columbus, Inc., 129 F.3d 551, 553 (11th Cir. 1997) (holding that a reasonable person might find being "[s]tripped of all responsibility . . . and isolated from conversations with other workers" intolerable).  Neither does Johnson's subjective preference for a particular job duty create intolerable conditions when that duty is removed from her responsibilities.  Doe v. Dekalb Cnty. Sch. Dist., 145 F.3d 1441, 1452 (11th Cir. 1998).  And though Johnson says her co-workers referred to her as "crazy," this alleged harassment is insubstantial in comparison to other cases in which this Court has found constructive discharge.  See Wideman v. Wal-Mart Stores, Inc., 141 F.3d 1453, 1455 (11th Cir. 1998) (finding constructive discharge when employer's conduct included improperly listing employee as a no-show when she was not scheduled for work, written reprimands resulting in suspension, soliciting negative comments about employee from other employees, failing to schedule employee for work, and delaying authorization of medical treatment).  Finally, Johnson was required to attend mandatory EAP counseling, but she never lost pay or benefits or was otherwise disciplined.  Moreover, Johnson's EAP leave was at her request.

12

On this record, the district court did not err in finding that Johnson's work conditions were not intolerable. The district court did not water down Johnson's evidence. Johnson simply failed to offer evidence sufficient to meet her burden to show constructive discharge. In any event, our independent review of the record satisfies us that the district court did not err by dismissing Johnson's hostile work environment claim. See Gowski v. Peake, 682 F.3d 1299, 1311 (11th Cir. 2012) ("To establish a hostile work environment claim under Title VII, the plaintiff must show that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." (quotation marks omitted)).

B.     COERCION OR DURESS

Johnson next claims her resignation was involuntary because it was a result of duress or coercion. Under the duress theory, this Court objectively considers, under the totality of the circumstances, whether "the employer's conduct in obtaining the employee's resignation deprived the employee of free will in choosing to resign." Hargray, 57 F.3d at 1568. While not dispositive, the following factors are helpful:

> (1) whether the employee was given some alternative to
> resignation; (2) whether the employee understood the
> nature of the choice he was given; (3) whether the
> employee was given a reasonable time in which to

13

choose; (4) whether the employee was permitted to select the effective date of the resignation; and (5) whether the employee had the advice of counsel.

Id. "[R]esignations can be voluntary even where the only alternative to resignation is facing possible termination for cause or criminal charges." Id. This is because the employee could "stand pat and fight." Id. (quotation marks omitted).

Johnson argues each of these factors weigh in favor of finding her resignation was involuntary. Specifically, she says she had no alternative but to resign because she had, just moments before, been threatened with arrest. This left her with no time to make her choice, and she did not have the advice of counsel.

The problem with Johnson's theory is that she was not threatened with arrest. As described above, Padgett did not threaten to arrest her—he simply read Johnson her Miranda rights. Neither is there evidence the Warden threatened to arrest Johnson when suggesting she resign. This record does not support Johnson's argument that her resignation was based on coercion or duress.

C.    MATERIAL MISREPRESENTATIONS

Johnson claims her resignation was not voluntary because Padgett threatened her with arrest knowing that "the threatened criminal prosecution could not be substantiated" because he did not investigate and had no evidence supporting an assault charge.

14

Under the misrepresentation theory, the "misrepresentation may be material if it concerns an alternative to resignation, such as the possibility of criminal prosecution." Hargray, 57 F.3d at 1570. "[A]n employee is not required to show that the employer intentionally deceived him in order for his resignation to be held involuntary." Id.

But as we've said, there is no evidence that Johnson was threatened with arrest at the time she resigned. Indeed, there is no indication of any other misrepresentation Padgett made. Similarly, Johnson has not suggested that the Warden made any misrepresentation to induce her to resign.

## V.

Finally, we address Johnson's appeal of the denial of her motion for reconsideration under Rule 59(e).[5] The only grounds for granting a Rule 59 motion are "newly-discovered evidence or manifest errors of law or fact." Arthur v. King, 500 F.3d 1335, 1343 (11th Cir. 2007) (per curiam) (quotation marks omitted). The motion cannot be used to "relitigate old matters, raise argument or present evidence that could have been raised prior." Id. (quotation marks omitted).

Johnson did not claim to meet this standard before the district court. Nor does she in this appeal. She seeks to only relitigate the merits of her claims. We

---

[5] Johnson also cited Rule 60(b), but this Court has recognized that when the post-judgment relief sought is the setting aside of the grant of summary judgment, it is properly characterized as a Rule 59(e) motion to alter or amend the judgment, rather than a Rule 60 motion for relief from the judgment. Mays, 122 F.3d at 46.

15

therefore cannot say the district court abused its discretion in denying Johnson's

motion for reconsideration.

**AFFIRMED.**